## GOODRICH v. BRUBAKER et al.
### No. 10046.

Court of Civil Appeals of Texas. Galveston.
Feb. 11, 1935.

Rehearing Denied March 7, 1935.

John & Levy and Sam W. Levy, all of Houston, for appellant.

Williams, Lee, Sears & Kennerly and Geo. D. Sears, all of Houston, for appellees.

LANE, Justice.

On the 24th day of March, 1923, W. S. Jacobs, W. C. Crow, G. F. Walters, E. C. Nicolai, and Mrs. Fannie S. Padgitt owned several tracts or parcels of land situated in the corporate limits of the city of Houston, Tex. There were three or more separate tracts owned by the parties, one of which was owned by W. C. Crow, one by W. S. Jacobs, and others by the several parties above named. The tracts, when viewed as a whole, were practically a square body of land.

On the date above stated, the owners agreed among themselves to have the whole body platted into streets, blocks, and lots, and make it an addition to the city of Houston, to be known as "South Lancaster Place." In accordance with such agreement, the parties caused the land to be surveyed and platted as agreed upon, and had the same duly placed of record. The recorded plat shows that the whole body of land was divided into two blocks and a fragment block, Nos. 1, 2, and 3. Fragment block No. 1 is on the north side of the land platted; block 2 is practically in the center of the body of the land and is bounded on the north by West Main street of the city of Houston, which runs practically east and west through the platted land, and which lies between blocks 1 and 2 of said addition. Blocks 2 and 3 are separated by Colquitt street of the city, which runs practically east and west, and block 3 is bounded on the south by a street known as Richmond road in said city. The main part of the addition is bounded on the west by Mandell street of the city. The land owned by W. C. Crow occupies the western parts of the three blocks of the addition and is, according to the recorded plat, covered by lots 1 and 2, block 1, same being the most northern block of the addition, lots 1, 2, 3, 12, 13, and 14 in block 2, which lies just south of block 1, and lots 1, 2, 3, 12, 13, and 14 in block 3. The remaining portion of the land composing the addition was owned by the parties named other than Crow, and was under the said agreement divided into lots and blocks, as was the land of W. C. Crow. The streets in such addition were by the parties conveyed to the city of Houston.

On the 5th day of May, 1923, after said land had been platted and such plats duly placed of record, W. C. Crow, for a recited consideration of $10 cash and other valuable considerations, made, executed, and delivered to the Guardian Trust Company, a corporation, a warranty deed to all lots owned by him in South Lancaster place, except lot 3 in block 1, and on the same day he executed and delivered to the Guardian Trust Company a power of attorney reading as follows:

"Know all men by these presents: That for and in consideration of Five Dollars ($5.00) and other good and valuable consideration to me in hand paid by the Guardian Trust Company, * * * receipt of which is hereby acknowledged, I, W. C. Crow, of Harris County, Texas, do here by these presents authorize and empower the Guardian Trust Company, in any and all conveyances of any of the following property, to-wit:

"All of those certain lots situated in South Lancaster Place, an addition to the City of

Houston; according to the plat thereof duly filed for record, described as follows:

"All of Lots one, two in Block No. One.

"All of Lots Nos. One, two, three, twelve, thirteen and fourteen, in Block No. Two.

"All of Lots Nos. One, two, three, twelve, thirteen and fourteen, in Block No. 3, to warrant by general warranty the title in my name and such warranty and warranties shall be as binding on me, my heirs, executors and administrators, as if I was the grantor in the several deeds to the property so conveyed.

"In testimony whereof, witness my hand at Houston, Texas, this 5th day of May, A. D. 1923.

"W. C. Crow."

On the 30th day of June, 1923, W. C. Crow conveyed to Wharton Weems lot 3 in block 1 of South Lancaster place, without any restrictions.

The plat mentioned nor the dedication bespoke any character of restrictions. Its sole effect was to dedicate the streets to public use and give the number, size, and dimensions of the lots and blocks therein.

Twenty of the lots in the addition situated on the east portion of the platted land, owned by parties other than W. C. Crow, were sold without any character of restrictions, and all are now occupied and used by business concerns.

In the addition, and adjoining the property of defendant Potter in the present suit, there was built about four years ago a large community grocery store, Weingarten's, a busy and large commercial establishment; on one side of it is a paved parking space for customers' cars; and immediately adjoining the property of the defendant Potter is a filling station of standard size, operated by the Sinclair Refining Company.

Other than the house on the property of plaintiff, Goodrich, there are only two residences in block 3, South Lancaster place, one of which belongs to the defendant Potter. More than half of this same block is now taken up by the business establishments as heretofore stated.

In December, 1923, the Guardian Trust Company, proposing to act by authority of the two instruments executed and delivered to it by W. C. Crow of date May 5, 1923, hereinbefore mentioned, made a conveyance under which plaintiff, R. H. Goodrich, holds title to lot 2, block 3, in said addition. In such conveyance there appears certain restrictions applicable only to lots owned by W. C. Crow, except lot 3, block 1, which had been sold by Crow without restrictions. The pertinent restrictions in the conveyance by the Guardian Trust Company to lot 2 in block 3, under which plaintiff holds, are substantially that the costs of any residence on the W. C. Crow lots shall not be less than $4,500; and on lots 12, 13, and 14 in block 3 residences shall be built of stucco, brick veneer, hollow tile, or concrete, and shall cost not less than $6,500.

"No fence of any character shall be erected on said premises within thirty-five feet of the front property line, unless the same shall be an iron picket yard fence, which shall not exceed thirty inches in height, including the coping."

The premises nor any part thereof shall ever be used for any business purpose of any character whatever.

"The grantee accepts this conveyance subject to the restrictions, easements and conditions above set forth, which it is agreed shall be deemed to be covenants running with the land, and for his heirs and assigns, covenants to and with the grantor and its assigns that he will, and that his heirs and assigns shall forever faithfully observe and perform said several restrictions and conditions, and each of them, and if grantee or any person claiming under him shall at any time violate, or attempt to violate, or shall omit to perform or observe any of the foregoing restrictions or conditions, it shall be lawful for any person owning land, which is subject to the same restrictions or conditions in respect to which default is made, or for the grantor herein, to institute and prosecute appropriate proceedings at law or in equity for the wrong done or attempted."

On the 21st of February, 1924, the Guardian Trust Company conveyed lot 14 and 55 feet off the west side of lot 13 in block 3 of the Crow land to T. P. Lee. Such deed contains the same restrictions as does the deed under which plaintiff, Goodrich, holds.

On October 25, 1923, Guardian Trust Company conveyed lot 12 and the east 5 feet of lot 13, block 3, of South Lancaster place addition, to F. A. Shaffer, which conveyance contains the same restrictions above mentioned.

On November 16, 1923, F. A. Shaffer conveyed the next above described lot and fraction of a lot to James E. Smith; such deed of conveyance containing the following recital: "The grantee accepts this conveyance subject to the restrictions, easements and conditions fully set forth in a deed dated October 23rd, 1923, wherein the above described property was conveyed by the Guardian Trust Company to F. A. Shaffer."

James E. Smith conveyed the same land as next above described to Mrs. H. E. L. Toombs; this deed contains no restrictions.

On December 26, 1931, T. P. Lee and Mrs. H. E. L. Toombs and husband joined in a conveyance of lots 12, 13, and 14 in block 3 of South Lancaster place to L. I. Schneider without any restrictions.

On December 26, 1931, Schneider conveyed said lots 12, 13, and 14 to Hugh Potter without any restrictions.

R. H. Goodrich, plaintiff in the present suit, bought and constructed his residence on lot 2, block 3, South Lancaster place, a part of the W. C. Crow land. This lot fronts south and abuts on the south or rear line of lot 13 in block 3, which fronts north.

For the purpose of operating a general real estate office thereon, Potter constructed on lot 13, block 3, adjoining the residence lot of Goodrich, a building which he uses as a real estate office.

Under the power of attorney above set out, Guardian Trust Company sold all the Crow lots, and each deed of the trust company contained the restrictions shown in the Dalyrimple deed, under which Goodrich holds.

The foregoing statement contains all the pertinent facts leading up to the bringing of suit by R. H. Goodrich.

Upon the facts and conditions then existing, as stated, R. H. Goodrich brought this suit against Hugh Potter, C. R. Brubaker, John F. Butler, Southwestern Realty Company, River Oaks Corporation, T. P. Lee, and Mrs. H. E. L. Toombs and husband.

Plaintiff alleged that on or about February 15, 1923, prior to the execution of any of the aforementioned conveyances, W. C. Crow acquired a tract of land in Harris County, Tex., and in connection with owners of adjoining tracts subdivided the several tracts into lots and blocks and adopted the name of South Lancaster place for the tracts and made it an addition to the city of Houston; that the tract of land owned by W. C. Crow, after being so platted and subdivided into lots and blocks, represented the west portion of said addition; that, in selling his lots, except lot 3 in block 1, W. C. Crow employed the Guardian Trust Company as his agent; that he and his agent, as an inducement to the public, as well as plaintiff, to buy a lot or lots in the Crow portion of said addition, and for the general purpose of enhancing the value of the Crow lots, entered upon and carried out a general scheme and plan of restricting the uses to which said lots might be put, such as prohibiting the use of any of said lots or improvements thereon except for residences, especially prohibiting the use thereof or any portion of the same for trade or business purposes; that such conditions and restrictions were contained in all the deeds executed by the Guardian Trust Company as Crow's agent, selling said lots, and that the restrictions were in such deeds expressly stated to be covenants running with the land, and were made to be for the benefit of all lot owners in said Crow portion of said South Lancaster place.

Plaintiff further alleged that he had bought his lot in the Crow portion of said addition for residential purposes in strict reliance upon the restrictions above mentioned, and was using the same as his home; that defendants were making use of lot 13 in block 3 of the Crow land for business purposes, and that, unless defendants were restrained, the desirability of plaintiff's property for a home would be greatly lessened, etc.

Plaintiff's prayer was as follows: "Premises considered the plaintiff prays that if defendants, or either of them, have placed on said Lot Thirteen (13) in said Block Three (3) of said addition, the objectionable improvements hereinabove set out, that this court order said defendants to immediately remove said improvements from said property; plaintiff further prays that defendants and each of them be perpetually restrained and enjoined from constructing, erecting or moving on said premises any such structure described and set out in this petition, or any other building of like kind or character for the conducting of a trade or business therein; and that they be perpetually restrained and enjoined from using said premises or any part thereof for a trade or business or in any manner in violation of the restrictions contained in their chain of title; and that such injunction and order herein prayed for issue not only against defendants herein but as well against their heirs, assigns and legal representatives, for costs of suit and for such other relief general, special and equitable as he may be entitled to receive."

Defendants T. P. Lee, Mrs. and Mr. Toombs, and River Oaks Corporation filed disclaimers of interest in the matters and things involved in the suit.

Defendants Brubaker, Butler, Southwestern Realty Company, and Hugh Potter filed answer, denying generally that there was a general plan or scheme with respect to South Lancaster place addition. They specially averred that practically if not all lots in

South Lancaster place, except those formerly owned by Crow, were sold without restrictions, and that change of conditions in the vicinity of the addition made it unreasonable to now enforce the injunction prayed for by plaintiff; that plaintiff had contributed to such change, in that he had erected a filling station in said addition and a large community store, occupied by Weingarten, Inc., and had violated the restrictions by erecting a wooden fence around his own property, and was therefore estopped to insist upon any restriction covenants with respect to the properties of others. They further alleged that, if there ever was a general plan or scheme as alleged by plaintiff, the same had been abandoned, and that their property, because of change of conditions, was more valuable for business purposes than for residential purposes. They prayed for a refusal of the injunction prayed for by plaintiff and for judgment decreeing the restrictions mentioned should be of no force and effect.

Plaintiff then filed a supplemental petition denying the allegations of defendants' answer, and, in particular answer to claim by defendants that plaintiff was violating the restrictions with his picket fence, alleged that he was willing to remove the fence, and that the court could make the removal a condition of his granting an injunction against the defendants.

The case was tried before the court without a jury, and judgment was rendered denying the injunction prayed for by the plaintiff. The judgment further recites that, upon the disclaimers of River Oaks Corporation and T. P. Lee and Mr. and Mrs. Toombs, it is ordered, adjudged, and decreed that plaintiff recover against said parties as prayed for, with costs adjudged against plaintiff.

From so much of the judgment as denies the injunction prayed for, R. H. Goodrich has appealed.

Appellant contends that the court erred in denying him the injunction prayed for, in that the undisputed evidence shows that W. C. Crow, the owner of lots 1 and 3, block 1, lots 1, 2, 3, 12, 13, and 14 in block 2, lots 1, 2, 3, 12, 13, and 14 in block 3, constituting a segregated portion of South Lancaster place, and forming a solid body of land, and his agent, the Guardian Trust Company, in platting, subdividing, and selling the lots, which are the particular lots described in paragraph A of the restrictive provisions contained in the deeds to these particular lots, created a general plan or scheme relative to that portion of South Lancaster place addition comprising these lots, and that plaintiff, who

bought under such general plan or scheme, is the owner of lot 2 in block 3 of such portion of the addition, and that defendant Hugh Potter purchased and acquired lot 13 in block 3 of said portion of the addition with actual and constructive knowledge of the restrictions in his chain of title and of the scheme, and, since no affirmative defense was established by defendants, plaintiff is entitled to enjoin defendant Hugh Potter and his tenants from using said lot for business purposes in violation of such restrictions and general plan or scheme.

■ It is made clear from the undisputed facts that appellee Hugh Potter, before he constructed his real estate office on his lot, the title to which he holds through the deed from Guardian Trust Company to T. P. Lee, which contains the restrictions mentioned, knew of the restrictive clauses in the deed from Guardian Trust Company to Lee. Purchasing the property and entering upon it, engaging in business prohibited, with notice of the restrictive conditions in the Lee deed, put Potter in the same attitude as that occupied by Lee. In Anderson v. Rowland, 18 Tex. Civ. App. 460, 44 S. W. 911, 912, it is said: "In a case where a covenant restricting the use of the land was violated, the court of appeals of New York said: 'But the question presented is, upon the conceded facts, really one of individual right, with which the question of public policy has little, if anything, to do. Parties competent to contract have contracted,—the one to sell a portion of his land, but only upon such conditions as will protect himself in the prosecution of business carried on upon the residue; the other agreeing to buy for a consideration affected by that condition, and enabled to do so only by acceding to it; and he therefore binds himself by contract to limit the use of the land purchased in a particular manner. There seems no reason why he and his grantee, taking title with notice of the restriction, should not be equally bound. The contract was good between the original parties, and it should, in equity, at least, bind whoever takes title with notice of such covenant.'"

A party should not be permitted to use the property inconsistently with the contract entered into by his vendor and with notice of which he purchased.

It seems to be well settled by authority that personal obligations, such as those assumed by T. P. Lee, grantor of defendant Potter, and in turn assumed by Potter, which are restrictions as to the use of land, may be enforced in equity against not only T. P. Lee, the original grantee, but also against Potter, who sub-

sequently purchased from Lee with notice of such restrictions. Parker v. Nightingale, 6 Allen (Mass.) 341, 344, 83 Am. Dec. 632; Burbank v. Pillsbury, 48 N. H. 475, 97 Am. Dec. 633; Anderson v. Rowland, supra.

The Court of Civil Appeals in the Anderson Case cites authorities and quotes at length from them: "'Reason and justice' * * * 'prescribe that * * * where a man by gift or purchase acquires property from another, with knowledge of a previous contract lawfully and for a valuable consideration made by him with a third person to use and employ the property for a particular purpose * * * the acquirer shall not, * * * in opposition to the contract, and inconsistently with it, use the property in a manner not allowable to the giver or seller.' * * * That such agreements are valid, and capable of being enforced in equity against all those who take the estate with notice of them, although they may not be, strictly speaking, real covenants, so as to run with the land, or of a nature to create a technical qualification of the title conveyed by the deed."

■ Answering the defenses pleaded by appellees in the trial court, plaintiff below (appellant here) says: That the erection of the fence around his residence in the restricted district constitutes only an unsubstantial violation of such restrictions, and constitutes no defense to the injunction prayed for by plaintiff, and does not estop plaintiff from enforcing the restrictions against the substantial violations of defendants in using their lots situated in the restricted district for business purposes; especially so, since plaintiff by supplemental pleading in open court offered to remove said fence.

We sustain the contention made. Plaster v. Stutzman (Tex. Civ. App.) 8 S.W.(2d) 750, 754, and numerous authorities therein cited; Green v. Gerner (Tex. Civ. App.) 283 S. W. 615, 618.

In the Plaster Case, supra, plaintiff was objecting to a violation of the restrictions by another lot owner who had erected a temporary dwelling contrary to the wording of the restrictions. The defendant alleged and proved that the plaintiff had a fence 5 feet high in front of his property, while the restrictions allowed only a fence three feet high. In that case a permanent injunction was granted, and this court refused to reverse the judgment on the ground that the plaintiff himself had violated the restrictions, saying: "Unsubstantial violations, such as the building of the fence by the plaintiff,

would not prevent him from maintaining an action for an injunction to prevent substantial violations of the covenant," citing many authorities.

After a careful examination of the briefs of the parties, we have reached the conclusion that the court erred in denying the injunction prayed for by the plaintiff, and the judgment should be reversed, and judgment should be here rendered granting such injunction, and it is accordingly so ordered.

Reversed and rendered.