BRITISH–AMERICAN OIL PRODUCING
CO. et al. v. BUFFINGTON et al.

No. 9475.

Circuit Court of Appeals, Fifth Circuit.

Dec. 19, 1940.

Rehearing Denied Jan. 14, 1941.

Ed. M. Whitaker, of Midland, Tex., Henry Russell, of Pecos, Tex., and W. E. Allen, of Fort Worth, Tex., for appellants.

Tom Sealy, of Midland, Tex., for appellees.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

J. J. Dorr owned an oil and gas lease on a section of undeveloped land in Pecos County, Texas. On July 30, 1937, he entered into a contract with D. M. Buffington and C. R. Smith for the drilling of a test well on the property. As consideration for drilling the well, Buffington and Smith were to receive a cash payment of $3,000 together with an undivided one-fourth interest in the oil and gas lease on the section of land. Among other things the contract provided:

"It is further understood and agreed that in the event said well is a producer, we

(Buffington and Smith) are to have the preference of all future drilling operations at the prevailing contract price.

"It is further agreed that in the handling of this as a joint venture, that there is to be no expense as overhead charged upon either side."

Buffington and Smith drilled the test well and it was a producer. On February 15, 1938, Dorr assigned an undivided one-fourth interest in the lease to Buffington and Smith. Thereafter Buffington and Smith assigned one-half of their one-fourth interest to A. J. Gibson and Richard Hamm, expressly reserving to themselves the drilling rights provided for in their original contract with Dorr. While the lease was owned by Dorr, three-fourths, Hamm, one-sixteenth, Gibson, one-sixteenth, and Buffington and Smith, one-eighth, the drillers completed four more wells upon the land. These four wells were drilled with cable tools at a price of $2.50 per foot. While the last well was being drilled, Dorr, Hamm, and Gibson assigned their interests, seven-eighths in all, to British-American Oil Producing Company. Buffington testified that while British-American was negotiating for the purchase of these interests in the lease he told Mr. Gile, geologist for British-American Oil Producing Company, "that we had the drilling rights on this property, and he told me that the British-American had no intention of over-riding those in any way or try to change or alter that, and that they recognized that right."

Within a short time after British-American Oil Producing Company acquired the seven-eighths interest in the lease it sent the following telegram to Buffington and Smith:

"We plan to drill remainder of wells on our recently purchased Payton lease in Pecos County using portable rotary outfit. Stop. Please submit your bid immediately covering the drilling of test wells with this type equipment.

"C. E. Wright,
"The British-American Oil Producing Company."

Buffington and Smith received this telegram and sent their reply:

"Our drilling agreement does not require us to use portable rotary machine. Stop. We are ready to begin the drilling of a well on suitable location on our lease at prevailing price in accordance with our contract.

Buffington and Smith."

Shortly after the exchange of these telegrams C. E. Wright, Superintendent of Production for British-American Oil Producing Company, talked with Buffington who told him that Buffington and Smith would drill the additional wells on the lease at the prevailing contract price, "regardless of what that might be determined to be." The witness Wright was asked, "They did tell you they would do the drilling in accordance with their contract, didn't they?" He answered, "I believe they did say that." British-American made no offer to let Buffington and Smith drill and proceeded to let a drilling contract for five wells to another driller. While British-American's second well was being drilled Buffington and Smith filed suit seeking enforcement of their contract and damages for its breach. After the filing of this suit British-American had other operators drill and complete eighteen wells on the lease. Buffington and Smith were not in position to drill the first of the twenty wells with portable rotary equipment, but they were at all times ready, willing, and able to drill the other nineteen wells with rotary equipment. They were not given the opportunity to do so.

The appellants contend that the contract provision giving Buffington and Smith "the preference of all future drilling operations, at the prevailing contract price" is too incomplete, indefinite, and uncertain to support the judgment entered below. The provision of the contract relative to future drilling operations is not as detailed and specific as it might have been, but we think it sufficiently definite and certain to support the judgment. A contract, to be enforcible, need not contain definitely and specifically the details of every fact to which the parties are agreeing. If the language used can be made certain by proof that is sufficient. Under this contract the owners of the lease were to determine and say where the hole should be, its size, and who should furnish casing. The parties were experienced oil operators who knew and understood what was to be done under the contract. The covenant as to drilling was so specific that no difficulty whatever was experienced while the lease was owned by Dorr, Gibson, Hamm, and Buffington and Smith. These parties,

in accordance with the terms of the contract, drilled four wells and Buffington and Smith were paid the "prevailing contract price" of $2.50 per foot. The disagreement as to the terms of the provision arose only after British-American came into possession of an interest in the lease. British-American Oil Producing Company was an experienced oil operator and its argument that the provision was too indefinite and uncertain fails when the telegram to Buffington and Smith is read. Their request for a bid on future drilling operations lacks those specific details which they now contend are essential and about which they complain. British-American Oil Producing Company was experienced enough to know that it was not necessary to incorporate every fact into the drilling contract. Moreover, the evidence adduced at the trial rendered the contract provision certain and specific in every detail. Dale Oil Refining Co. v. City of Tulia, Tex.Civ.App., 25 S.W.2d 671; Burger v. Ray, Tex.Civ.App., 239 S.W. 257; Southwest Pipe Line Co. v. Empire Natural Gas Co., 8 Cir., 33 F.2d 248, 64 A.L.R. 1229.

The appellants further contend that Buffington and Smith were in default and not ready, able, and willing to carry out their part of the drilling contract. The telegram from Buffington and Smith in reply to the request for a bid did not operate as a repudiation of the drilling contract. The British-American Oil Producing Company never tendered the drilling of the wells to Buffington and Smith, it simply asked for bids. The contract gave Buffington and Smith the preferential right to drill the wells at the prevailing contract price and they were under no obligation to submit a bid. The fact that the appellees filed their suit after only two of the twenty wells had been drilled shows that they wanted and were offering to do the drilling and were in a position to do so.

We think it clear that when Dorr and Buffington and Smith entered into the contract they did so with the intention of burdening the lease and the development of the leasehold with a preferential right in appellees to perform all future drilling operations at the prevailing contract price. The British-American Oil Producing Company took assignments of interests in the lease with notice, actual and constructive, of the existence and terms of the preferential drilling right. It recognized the

binding character of the covenant when it asked for bids for future drilling. It took its assignments subject to the contract and is bound by its terms. Anderson v. Rowland, 18 Tex.Civ.App. 460, 44 S.W. 911; Graham v. Omar Gasoline Co., Tex. Civ.App., 253 S.W. 896; Southwest Pipe Line Co. v. Empire Natural Gas Co., 8 Cir., 33 F.2d 248, 64 A.L.R. 1229; American Refining Co. v. Tidal Western Oil Corporation, Tex.Civ.App., 264 S.W. 335; Pierce-Fordyce Oil Ass'n v. Woodrum, Tex.Civ.App., 188 S.W. 245; Southern Minerals Corporation v. Simmons, 5 Cir., 111 F.2d 333; 7 R.C.L. § 18, p. 1101, § 39, p. 1125.

The appellant Dorr contends that when he sold his interest in the lease to British-American he was no longer liable under the contract. He points to the finding of the court that a mining partnership came into existence under the contract, and claims that when he sold his interest he passed out of the partnership and was released from further liability. After Dorr sold his interest in the lease he had no further control of drilling. Buffington knew of Dorr's sale to British-American and approved of it. After this sale Buffington made no further demands on Dorr and had no communication with him. Under these facts Dorr should not be held liable for the performance of the contract by his assignee, British-American Oil Producing Company.

The evidence in the record sustains the findings of the court and jury that the prevailing price in the territory for drilling oil wells of the character and to the depth of the ones in suit was $2.50 per foot; and that on this basis the drillers would have made a profit of $1,250 per well. This profit, however, must be reduced by 1/8th since Buffington and Smith would have been liable for their proportionate share of the drilling costs on this basis. The profit of $1,250 per well will be reduced by 1/8th, $156.25, to $1,093.75 per well.

Since the appellees were not in position to drill the first of the twenty wells with portable rotary equipment damages should only have been based upon nineteen wells. Damages on nineteen wells at $1,093.75 per well amounts to $20,781.25. Therefore, the judgment in favor of Buffington and Smith will be reduced from $25,000 to $20,781.25. This judgment will be set off against the judgment of $25,382.46 recovered by Brit-

ish-American Oil Producing Company on its cross-action, leaving judgment in favor of British-American in the sum of $4,601.-21 instead of $382.46. Dorr will be released from liability.

The judgment as modified is affirmed.

HUTCHESON, Circuit Judge (dissenting).

What the parties to it intended as a protective arrangement between joint venturers, owners of oil properties, to insure that the drilling development would be competently done and at a reasonable price, has, I think, been turned by the judgment below and its affirmance here into a contrivance by which appellees have obtained their share of production without paying their share of the drilling costs. If I could agree with the majority that the provision that appellees are to have the "preference of all future drilling operations at the prevailing contract price", was sufficiently definite to constitute an enforceable option, I still could not agree with them that it was an option by which appellees were to profit at the expense of their associates. The further provision, "It is further agreed that in the handling of this as a joint venture there is to be no expenses as overhead charged upon either side", makes it clear at once, I think, that the parties understood they were joint venturers and understood too that in accordance with the prevailing rule, 20 R.C.L., at 877; 30 C.J., at 860; 47 C.J., at 786; Wilson v. Hunt, Tex.Civ.App., 270 S.W. 263; neither of the parties was to profit at the expense of the others. If therefore the provision for "preference" is definite enough to be effective as an option, it is effective only to give appellees the drilling preference at the best price obtainable, here the contract price at which the wells were actually drilled, and the words "prevailing contract price" must be, so construed.

Under this construction appellees' suit for large profits would fail, both because it was plainly intended that it should not make profits out of the drilling and because the $2 contract price at which the wells were drilled was the prevailing contract price.

But I cannot agree with the majority that the provision was enforceable as an option, for its terms were so uncertain and indefinite as to be incapable of enforcement. Summers on Oil and Gas, Permanent Edition, Vol. 4, § 681, at 81; Emery Bros. v. Mutual Benefit Oil Company, 73 Okl. 94, 175 P. 210; Forster Motor Company v. Slaterbeck, 186 Okl. 395, 98 P.2d 17; Mills & Willingham on Law of Oil and Gas, at 290; Wynne v. McCarthy, 10 Cir., 97 F.2d 964; Jordan v. Buick Motor Company, 7 Cir., 75 F.2d 447; Spivey v. Saner-Ragley Lumber Company, Tex. Com.App., 284 S.W. 210. It would be difficult I think to find a provision more fatally indefinite than this one. It is on its face indefinite for it does not say when or where the prevailing price is to be determined. The very difficulty experienced here on the trial in undertaking to determine what was the prevailing contract price shows the indefiniteness of that clause. Indeed, the testimony affirmatively shows that there was no such price unless it was the contract price at which the wells were actually drilled. Appellees' witness testified that the contract price for drilling in the area ranged from $2 to $2.75 a foot, and Buffington himself testified that there were two ways of determining the prevailing contract price, one where it was a matter of favoritism and the other where it was done by competitive bidding. So, under the evidence in this case, including that, that these wells were drilled at a contract price of $2, it seems clear to me that it was not intended to speak of a general prevailing contract price but of the contract price determined by the bidding on the particular development and therefore not $2.50 but $2, for which contract price the drilling was done, was the prevailing contract price as to it. Had the agreement provided for the average contract price or the price paid for the greatest number of wells, there might have been some warrant for claiming that the agreement was definite and that the price was to be determined by averaging or counting the wells. But here the clause is either too general and too uncertain to be susceptible of that determination required when contract rights are claimed or asserted or it means as to these wells the price at which they could be actually contracted.

But there is still another reason why, in my opinion, the judgment was wrong. That reason is, that the evidence shows beyond dispute that the option, if an option, was not separable as to each well to be availed of as each well was drilled, it was entire and for "all future drilling operations" and as such, it was enforceable as to all or none. Being an option contract it was the duty of appellees, when appel-

lant tendered them the opportunity to drill, to accept or reject the option. Upon the undisputed evidence, because of the requirement for rotary drilling appellees rejected it and at once sued appellants as for breach of the option. Having rejected the opportunity to avail of the option when opportunity was tendered them, they lost the option. It did not as the majority opinion would indicate, remain suspended while the first well was drilled, to be availed of on later drillings. It seems clear to me that the judgment was wrong and should be reversed. I respectfully dissent from its affirmance.