### THOMSON et al. v. DOZIER.
### No. 4195.

Court of Civil Appeals of Texas. El Paso.
May 28, 1942.

Rehearing Denied Sept. 10, 1942.

James H. Hart, of Austin, of counsel, Hart & Brown, of Austin, for appellants.

Ike D. White and H. Grady Chandler, both of Austin (White, Taylor & Chandler, of Austin, of counsel), for appellee.

PRICE, Chief Justice.

This is an appeal from the judgment of one of the district courts exercising jurisdiction in Travis County. Mrs. Winnie M. Dozier, as plaintiff, sued R. M. Thomson and his two daughters to cancel and annul a restrictive covenant in a deed by Thomson and his now deceased wife to W. E. Dozier. The trial was before the court without a jury, judgment for the plaintiff, and denying defendants a reformation of the deed as prayed in their answer. This appeal was duly perfected from the judgment.

The parties will be here designated as they were in the district court.

No questions on the pleading are presented, and it is deemed unnecessary to state same other than in connection with the issues hereafter discussed.

Defendant Thomson in 1923 was occupying, with his wife, as a home Block 9, Division "E", in the City of Austin. This tract of land was square in shape; it had an eastern frontage on Rio Grande Street of 276 feet. The western boundary of the block was the east line of West Street; on the north and south it likewise abutted on streets. The residence was a large two-story brick and rock house situated somewhat nearer the north than the south end of the block and nearer to the west than to its east side; it faced east towards Rio Grande Street, the front steps were about 122 feet from the west line of Rio Grande Street. All of the block was used as a homestead, and none of the outbuildings thereon were nearer the east line of the block than the front of the residence. This homestead was the separate property of Mrs. Thomson.

In the latter part of 1923 W. E. Dozier requested Mr. and Mrs. Thomson to sell him the south 121½ feet of the block to the end that he might erect a home thereon. The negotiations culminated on the 19th day of January, 1924, when the south 121½ feet of the block were deeded to Mr. Dozier by Mr. and Mrs. Thomson. The consideration of the deed was $12,500, cash $5,000, and two notes in the sum of $3,750 each. This deed contained the following covenant: "The Grantee covenants and agrees that neither he nor his heirs or assigns, shall erect any residence or building upon any portion of the East end of the parcel of land herein conveyed and described, within 100-feet and 5-inches of the East boundary line of said tract; that

is to say, no residence or building shall be erected upon the property herein conveyed which shall extend East of a line drawn parallel with the East boundary of said lot and distance 100-feet and 5-inches therefrom, it being understood, however, that the steps of any such residence or building may, if desired, extend East of such line. It is further agreed that any residence or building which may be erected upon said premises covering any portion of the East one-half of the lot herein conveyed shall front East. It is expressly understood, however, that the West one-half of the premises herein conveyed,—that is to say, the portion thereof fronting on the West Avenue and running East 138-feet, shall not be subject to any conditions or restrictions whatever; and it is further agreed that the restrictions and limitations mentioned in a codicil to the Will of 'Mrs. Mary M. Walker, are waived and are set aside and the restrictions and covenants hereinabove contained are made and established in lieu thereof."

The two notes described in the deed were paid off and the lien thereof released.

Mr. Dozier employed an architect to draw plans for a residence on this property. According to the plans drawn up the residence was in all respects to conform to the restrictions set forth in the deed aforesaid. He was unable, or did not desire, to erect the house as planned, and later erected a small residence on the unrestricted portion of the property.

Mr. Dozier died September 18, 1930, still owning this land and never having built on the eastern part of it. Mrs. Thomson died August 3, 1930.

Mr. and Mrs. Thomson, to the death of Mrs. Thomson, continued to occupy the premises as their home. Mr. Thomson, from the death of his wife, has continuously occupied same as a homestead. No buildings have been placed on the block nearer to Rio Grande Street than the front of the Thomson residence.

On July 10, 1940 plaintiff filed this suit claiming that the restrictions in the deed are void, and said deed conveyed 'full legal title without reservation or restriction; that the restrictions are unreasonable; that the operative effect of the covenant terminated with the death of Mrs. Thomson; that such covenant terminated on the payment of the purchase money; that the covenant cast a cloud on her title, for which she sought removal and for injunction against the defendants with interfering with her unrestricted use and occupancy of the east part of the said land.

Defendants' answer was a general denial and a cross-action for the reformation of the deed if the covenant therein contained was other than a restrictive covenant running with the land.

Defendants predicate their appeal on four points. We shall discuss only two.

No. 1 is as follows: "As owners of all of Block No. 22, the Thomsons, in selling part of the block and retaining the balance, had the right, upon agreement with the purchaser, to impose upon the land sold the building restrictions which are stated in the deed."

No. 2: "The deed clearly discloses the intention of the parties that the covenants should run with the land and creates covenants which do run with the land."

The first point involves an assumption that the covenant in the deed runs with the land; the second is an assertion that the deed discloses that it was the intention that same run with the land.

Defendants' fifth proposition is as follows: "The restrictive building agreements contained in the deed which was accepted by Dozier are covenants running with the land, because they affect the use of the land conveyed to the grantee, and they pertain to, and benefit the use of, the land retained by the vendors."

A construction of the written covenant contained in the deed under which plaintiff claims determines this point. This construction to be in the light of the facts immediately surrounding the parties at the time of the execution of the deed.

Mrs. Thomson retained slightly more than half the block. Before the conveyance the entire block was a homestead. The evidence indicates that it was a rather commodious residence. This existing residence had been long occupied by Mr. and Mrs. Thomson as a homestead. To an extent its existence had an influence in determining the future use of the entire block. It fronted east on Rio Grande Street and was about 120 feet from the west line thereof. Any use of the south portion of the block that would interfere with the comfortable enjoyment of her residence would necessarily affect the value thereof. Considering the nature and probable value of the improvements thereon, it was probable that the retained prop-

erty was destined for a long time to be used as a residence.

We have mentioned Mrs. Thomson solely so far. The fact that Mr. Thomson, the now owner of the property, has and had at all relevant times a homestead right in the retained property has not been overlooked. Even though the covenant was held to be a mere personal covenant, his homestead right might and perhaps would entitle him to enforce same. He had at all times the right to use and occupy same as a home. The covenant was in terms made with him.

But there is now complete title in the defendants—a title derived in part at least from the grantor of plaintiff's predecessor in title. If this be a lawful covenant appurtenant to the retained land, defendants have the right to enforce same. If they have the right to enforce same, plaintiff has not the right to have the servient estate relieved from its burden. The covenant as written in the grant beyond question purports to restrict the use of the property granted. Some purpose must be attributed to the insertion of the restriction. The only reasonable purpose that can be attributed is the effect that the restriction would have on the use and enjoyment of the retained property.

It appears, we think, that the owner or occupant of the retained property was the only one that had a legitimate and proper concern with restricting the use of the property granted. It was a reasonable assumption, we think, on the part of Mrs. Thomson that the retained property had and would have more value as a place of residence than for any other purpose. There was nothing unlawful in her seeking, within reasonable bounds, to protect this value—protect the comfortable enjoyment of the property retained by her.

Much has been said in plaintiff's brief as to the burden of proof in this case. The defendants are not seeking to affirmatively enforce this covenant. Plaintiff, on the other hand, seeks to have the title of her land quieted. The very assumption of her action is that this covenant as it exists clouds her title. She is seeking to have her own contract and that of her husband declared without legal efficacy. We assume that Mr. and Mrs. Dozier were married at the time this conveyance was made.

■ The covenant in the conveyance provides it shall be on the heirs and assigns of W. E. Dozier. This we think some evidence that it was intended to operate in favor of the heirs and assigns of Mrs. Thomson. It is to be noted that the duration of the restriction is not stated in the covenant. This does not impair its validity. Abernathy v. Adoue, Tex.Civ.App., 49 S.W.2d 476.

■ The end to be sought in the construction of this deed in relation to the covenant in question is the mutual intention of the parties thereto. Involved in this construction is the determination of whether it was the express mutual intention that it should be appurtenant to the land retained and a burden on the land conveyed, or merely a covenant personal to the grantors. 12 Tex.Jur. 8; 21 C.J.S., Covenant, Action of, § 16, p. 869; Berry v. Spivey, 44 Tex.Civ.App. 18, 97 S.W. 511; Hopkins v. Hopkins, 103 Tex. 15, 122 S.W. 15; 14 Tex.Jur. 923.

■ The language of the covenant is that of the grantors and should, in case of doubt, be construed in favor of the grantee. This principle of construction likewise applies for the further reason that it purports to impose a restriction on the free use of the property granted.

■ Despite this rule of construction, borrowing the language of Judge Pierson in the case of Curlee v. Walker, 112 Tex. 40, 244 S.W. 497, 498, "the law recognizes the right of parties to contract with relation to property as they see fit, provided they do not contravene public policy and their contracts are not otherwise illegal." The proposition announced is supported by a long line of authorities. Hill v. Trigg, Tex.Com.App., 286 S.W. 182; Green v. Gerner, Tex.Com.App., 289 S.W. 999; Couch v. S. M. U., Tex.Civ.App., 290 S.W. 256; Plaster v. Stutzman, Tex.Civ.App., 8 S.W.2d 750; Scott v. Champion Bldg. Co., Tex.Civ.App., 28 S.W.2d 178; Monk v. Danna, Tex.Civ.App., 110 S.W.2d 84; Co-op. Vineyards Co. v. Ft. Stockton, Tex. Civ.App., 158 S.W. 1191; Hooper v. Lottman, Tex.Civ.App., 171 S.W. 270; Anderson v. Rowland, 18 Tex.Civ.App. 460, 44 S.W. 911; Wolf v. Brass, 72 Tex. 133, 12 S.W. 159; Wilson Co. v. Gordon, Tex.Civ. App., 224 S.W. 703; Lowrance v. Woods, 54 Tex.Civ.App. 233, 118 S.W. 551; Thomson on Real Property, Vol. 4, p. 472, sec. 3360; 7 R.C.L. p. 1114; 12 Tex.Jur. p. 144; Natural Products Co. v. Dolese & Shepard, 309 Ill. 230, 140 N.E. 840.

The language quoted above was from a case dealing with a general plan of im-

provement. But this fact does not weaken its application here. There is here involved the question of the placing of a servitude on land in favor of other land.

■ We are of the opinion that the covenant in question here is one running with the land. It affects the use of the land conveyed, pertains to and benefits the use of the land retained. Stewart v. Alpert, 262 Mass. 34, 159 N.E. 503; Thompson on Real Property, Vol. 4, p. 524, sec. 3411; Gulf, C. & S. F. Ry. Co. v. Smith, 72 Tex. 122, 9 S.W. 865, 2 L.R.A. 281; 7 R.C.L. pp. 1114, 1115; 21 C.J.S., Covenants, § 54, p. 922; 21 C.J.S., Covenants, § 22, p. 898; 12 Tex.Jur. p. 157; Natural Products Co. v. Dolese & Shepard, 309 Ill. 230, 140 N. E. 840; Doll v. Moise, 214 Ky. 123, 282 S.W. 763; Booth v. Knipe, 225 N.Y. 390, 122 N.E. 202; Smith v. Gulf Refining Co., 162 Ga. 191, 134 S.E. 446, 51 A.L.R. 1323; Beckham v. Ward County Irr. Dist., Tex. Civ.App., 278 S.W. 316.

Our holding here in no way conflicts, we think, with those of the Supreme Court in the cases of Baker v. Henderson, 137 Tex. 266, 153 S.W.2d 465, and Davis v. Skipper, 125 Tex. 364, 83 S.W.2d 318. In the first case there was no privity of estate between plaintiffs and defendants. The restriction was not placed on defendants' property in favor of plaintiffs' property. As we construe the holding, the restriction was appurtenant to the balance of Lot No. 23 retained by Thomas H. Henderson, but was not appurtenant to the property owned by the defendants. The restriction was finally construed as not restricting the construction contemplated by defendants. Further, construing the restrictions as contemplated by plaintiffs, it would render the use of the tract conveyed impossible of use for the purpose conveyed. If assignees of Thomas H. Henderson of the restrictive covenant, plaintiffs could only succeed to the rights of their assignor. Though not involved in the case, we think it is implied that as construed the covenant was appurtenant to the retained land of Thomas H. Henderson.

Here, there is no impossibility of use of plaintiff's portion of the lot just as it was contemplated in the grant thereof. If the construction of the residence on the west portion thereof does interfere therewith, this was a voluntary act of the husband of plaintiff, her predecessor in title.

In the case of Davis v. Skipper, supra, it was held that a restrictive covenant running with the land was not involved, one of the reasons being absence of any evidence that the provision was intended for the benefit of other land then owned by the grantor and covenantee. Further, that even though it be a covenant running with the land, that same could not be enforced by injunction. Cited in support of such holding is Stevens v. G., H. & S. A. Ry. Co., Tex.Com.App., 212 S.W. 639, and Maddox v. Adair, Tex.Civ.App., 66 S.W. 811.

■ We think it too clear to require discussion that the release of the vendor's lien as applied to the two unpaid notes was not effective to discharge this covenant.

It is said that the restrictions are not mutual. Defendants have never made any use of the retained property out of harmony with the restrictions. If in the future such use is made, then the question would arise as to the effect of such use on the covenant. There is precedent for the theory that this covenant is mutually binding. McQuade v. Wilcox, 215 Mich. 302, 183 N.W. 771, 16 A.L.R. 997; Sanborn v. McLean, 233 Mich. 227, 206 N.W. 496, 60 A.L.R. 1212.

This question, however, is not involved in this appeal.

We have examined this case in the light of the binding effect of the finding of the trial court as to issuable facts. There is, we think, no substantial conflict in the evidence—in our opinion no different inferences to be drawn from undisputed facts.

Despite the rule of construction imposed as to the quality and content of building restrictions contained in the grant, we have come to the conclusion that, as a matter of law, under the undisputed evidence, this is a valid covenant appurtenant to the land of defendants imposed upon that of plaintiff.

It is therefore ordered that the judgment of the trial court be in all things reversed and judgment here rendered that plaintiff take nothing, and that defendants be denied relief on their cross-action conditionally seeking reformation.