STARR BROTHERS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32916. Promulgated April 30, 1952.

*Louis C. Wool, Esq.,* for the petitioner.
*Lester H. Salter, Esq.,* for the respondent.

150

OPINION.

ARUNDELL, *Judge:* The issue in this proceeding is the narrow one of whether the amount of $6,394.57 received by the petitioner in 1943 from United Drug Company was capital gain or ordinary income. The petition makes mention of a March 1, 1913, value, but this was not developed at the trial or on brief, and the parties have presented the case on the theory that the entire amount received was income.

The statute defines as capital assets "property held by the taxpayer" with certain exclusions that are not presently material. Internal Revenue Code section 117 (a) (1). Capital gain is the "gain from the sale or exchange of a capital asset * * *." Code section 117 (a) (2) and (a) (4).

In view of the provisions of the Code, upon which both parties rely, there are two matters that require resolution before we can arrive at the ultimate answer in this proceeding. The first is whether the 1903 agreement was property in the hands of the petitioner. Second, if it was property, whether there was a sale of it. If both are resolved affirmatively, the petitioner makes its case under the applicable Code provisions. If either is resolved in the negative, the respondent's determination must stand.

The starting point is the agreement of November 17, 1903, between the petitioner and United Drug Company. That agreement nominated the petitioner to be United Drug Company's special selling agent in New London, Connecticut, for as long as the petitioner should perform the terms of the agreement. The petitioner, on its part, agreed to uphold all of the products of United Drug Company to the full list retail prices set by that company. In short, the agreement was one whereby the petitioner became United Drug Company's exclusive retail outlet in the city of New London, without a time limitation. Neither party questions the validity of this contract. While contracts are property, the decisions are to the effect that not all prop-

erty rights constitute capital assets. Whether or not they are depends, at least in part, upon the nature of the income that would normally result from the fulfilment of the terms of the contract. If it is one that provides for the rendition of personal services, its sale, commutation, or extinguishment by agreement between employer and employee does not change the inherent character of the income realized under it. *Thurlow E. McFall*, 34 B. T. A. 108, *George K. Gann*, 41 B. T. A. 388. Even though there is no strict employer-employee relation, if the contract requires the rendition of personal services, the proceeds of its sale are ordinary income. *General Artists Corporation*, 17 T. C. 1517. Again, if it provides for payment of rent, a lump sum payment in commutation does not change the character of the income that is realized. *Hort* v. *Commissioner*, 313 U. S. 28. Proceeds from the sale of the right to insurance commissions are ordinary income "since there was no capital asset to dispose of." *Estate of Thomas F. Remington*, 9 T. C. 99. In the *Hort* case, *supra*, a lessee of real estate under a long term lease paid a lump sum to effect a cancelation of the lease. The lessor claimed that the lump sum payment, if income at all, was taxable under the gain or loss provisions of the Revenue Act of 1932 as a capital gain. The Supreme Court, in holding that the payment was ordinary income, said:

Where, as in this case, the disputed amount was essentially a substitute for rental payments which § 22 (a) expressly characterizes as gross income, it must be regarded as ordinary income, and it is immaterial that for some purposes the contract creating the right to such payments may be treated as "property" or "capital".

On the other hand, an agency contract, even though services may be required in order to make it lucrative, is regarded as property that is a capital asset, and a payment by the principal for its termination is capital gain. *Jones* v. *Corbyn*, 186 F. 2d 450. In that case, the taxpayers were members of a partnership which, by contract, was the exclusive agency of a life insurance company in a designated territory. In 1944, the company and the agency entered into a written contract which terminated the partnership's agency contract, and provided that the partnership should turn over to the insurance company its office space, and records and files pertaining to the company business. The insurance company paid the agency the sum of $46,500, of which $1,500 represented fees to be paid by the agency to attorneys representing it in litigation then pending between the company and the agency. The court held that the $45,000 received by the agency constituted capital gain. On the point of whether the agency contract was a capital asset, the court said in part:

The contract or franchise had at all times substantial value. It was capable of producing income for its owner. It was enforceable at law and could be bought

and sold. Acting under its provisions, the agents developed a large and lucrative business. * * * Except for the renewal commissions, the effect of the termination contract was to transfer the business to the company intact.

The statutory definition of capital assets includes all property not excluded. Mertens Law of Federal Income Taxation, Vol. 3, Sec. 22.04. If the thing given up by the taxpayers is property within the meaning of the statute, then, of course, it is a capital asset. The term "capital assets" should not be considered in a technical or restricted sense but should be given its ordinary meaning.

In holding that the transaction between the insurance company and the agency was a sale, the court said:

Broadly speaking, a sale is a transfer of property for a valuable consideration. * * * [cases]. By terminating the contract and transferring the business to the company, there was a sale and transfer of a capital asset within the meaning of the statute. * * * The amount of the settlement in this case was not based upon damages. It was based upon the value of the exclusive business franchise.

In the case of *Elliott B. Smoak*, 43 B. T. A. 907, the taxpayer had an exclusive agency for leasing and licensing machinery. He sold all of his interest in the agency contract for a sum paid in cash and a further sum to be paid over a period of years. In holding the income realized to be capital gain, we said that "What the petitioner sold was an agency business" and that "it was a capital asset."

We are of the opinion that the facts in the present case bring it within the scope of the holdings in *Jones* v. *Corbyn*, and *Elliott B. Smoak, supra.* The exclusive agency owned by the petitioner constituted property in its hands, and it sold that property in the taxable year. The agency contract did not require it to render personal services, though to be sure the petitioner expected to perform selling services in order to assure itself of income. But there was no employer-employee relationship between it and the grantor of the license. There was nothing in the nature of commissions or rentals to be paid by the grantor, as in the *Remington* and *Hort* cases, *supra.*

The respondent's principal argument is that the transaction between the petitioner and United Drug Company was not a sale but was essentially an extinguishment of the petitioner's exclusive agency. This argument is answered by the case of *Isadore Golonsky*, 16 T. C. 1450, where the owner of real estate paid a lump sum to the lessees for an accelerated termination of the lease. The lessees were before us in that case and we held that the income realized by them in the lump sum payment was capital gain. In so holding, we pointed out that the lessees "had a right under the lease to possession and use of the property" and that the sum paid by the owner was "to acquire the right to the use and possession of the property" for the remainder of the lessees' term, and concluded that "That is a sufficient transfer of property to bring the transaction within section 117." We said, in part:

The use of the word "cancellation" is not determinative where something transferred. Cf. *Jones* v. *Corbyn*, 186 F. 2d 450. The case is unlike *Hale*

*Helvering*, 85 F. 2d 819, involving the satisfaction of a debt in which no property was received by the debtor.

Similarly, in *McAllister* v. *Commissioner*, 157 F. 2d 235, where the life tenant sold her interest to the remainderman under an instrument which provided that her interest should be "terminated," the court held that the choice of words was not determinative of what had actually occurred, and treated the transaction as the sale of a capital asset by the life tenant.

On authority of the above cases, we hold that the exclusive license held by the petitioner under the 1903 agreement was a capital asset which it sold to United Drug Company in 1943, and that the income realized was capital gain.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

LeMire, *J.*, concurring: I think that this case involves the same question we had before us in *General Artists Corporation*, 17 T. C. 1517. The distinction of the present case on the grounds that the assigned contract here does not require the "rendition of personal services" is, I believe, unwarranted. Accordingly, I concur in the result reached in the instant case, but wholly on the basis of my dissenting opinion in the *General Artists Corporation* case.