LOUIS W. RAY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JULIA RAY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 30909, 30910. Promulgated May 29, 1952.

*William P. Fonville, Esq.*, for the petitioners.
*Frank C. Allen, Esq.*, for the respondent.

OPINION.

JOHNSON, *Judge:* The Commissioner determined deficiencies in income tax for the year 1946 against each of the petitioners in the amount of $1,910.77.

The sole question for decision is whether $20,000 received by petitioners from their lessor in a lease was taxable as ordinary income, as the Commissioner determined, or as gain from the sale of a capital asset, as petitioners contend.

All of the facts were stipulated and are so found, a summary of which follows.

Petitioners are husband and wife, residents of Dallas, Texas, and filed income tax returns for 1946 on the community property basis with the collector of internal revenue for the second district of Texas. Petitioner in the singular refers to Louis W. Ray, head of the community and who acted therefor.

From June 1, 1944, to May 31, 1949, petitioner's sole business was the owner and operator in Dallas of a retail merchandise store, commonly known as a variety store, due to the type of merchandise therein sold, which business he carried on in a store room 20 by 75 feet, which he rented and occupied by virtue of a 5-year written lease (hereinafter called the lease) from the Republic National Life Insurance Company, hereinafter called the lessor, and wherein petitioner is called lessee. This store room was part of a building owned by lessor containing other store space, which lessor rented to other parties for mercantile purposes. The total consideration recited in the lease was $6,960, payable in monthly installments of $100 each for the first 12 months, and $120 per month thereafter until $6,960 was paid. Paragraphs 14 and 15 of the lease are as follows:

14th. Should the East 100 Feet of this building in its entirety be leased or rented to a Variety Store i. e., a store of the same general type as that now operated by Lessee herein, such as Woolworth and Company or S. H. Kress, the Lessee shall have the option to cancel this lease on four (4) months notice, which notice must be given within 130 days of receipt of written notice from the Lessor that such space has been occupied by said Variety Store. Lessor agrees to give such notice on or before the date of such occupancy.

15th. Lessor agrees that unless the east 100 Feet of this building be leased in its entirety to a Variety Store of the type mentioned in paragraph 14, it will not, during the period of this lease, rent any space in this block to a Variety Store as defined herein. This clause is not intended to prohibit the Lessor from

leasing any of its space to any store or stores which, as a part of its business, carries a line of notions similar to those for sale by Lessee.

On or about December 17, 1946, the lessor was desirous of selling its building containing the leased premises and the premises referred to in paragraph 15, but was unable to sell same to its prospective purchaser because of the covenant contained in paragraph 15, and "sought to acquire from petitioners all of their right, title and interest in and to such lease in so far as the provisions of paragraph 15 thereof were concerned." On December 17, 1946, petitioner, for the cash consideration of $20,000 paid him by lessor, executed and delivered to lessor an instrument, a copy of which is Exhibit B of the stipulation, hereinafter referred to as "Exhibit B."

Exhibit B, after describing the lease, sets out paragraph 15 thereof, and proceeds as follows:

And, WHEREAS, Paragraph fifteen of said lease was intended to and does protect the undersigned, lessee, from competitive encroachment during the term of the lease, aforesaid, and the undersigned has relied upon this lease, with that particular clause therein and said clause in such lease has definite monetary value and is of definite monetary value to said lessee.

And, WHEREAS, the Republic National Life Insurance Company is about to sell the building which houses lessee's variety store, but is unable to complete sale thereof unless and until the undersigned, the lessee, relinquishes that portion of the lease which is contained in Paragraph fifteen, and, whereas, in so doing, said lessee thereby would prejudice himself and his rights and invoke definite monetary loss to himself; and, whereas, the undersigned, lessee, is not required by law or morals to change said lease in any respect during the term thereof; and, whereas, the undersigned agrees with said Insurance Company that this provision in his leasehold interest in and to said property is of value to himself and of value to said Insurance Company, and in consideration of all circumstances, for value paid, he is willing to sell to said Insurance Company the provision and clause in his lease bearing No. 15, as quoted above.

Now, therefore, in consideration of the sum of Twenty Thousand ($20,000.00) Dollars cash money in hand paid to the said L. W. Ray, the undersigned, by said Insurance Company, the receipt whereof is hereby acknowledged, the said L. W. Ray does, by these presents, bargain, sell, release and forever quit claim unto said Insurance Company, its successors and assigns, all his right, title and interest in and to the leasehold interest owned by him, as above identified, covering the space in the building of said Insurance Company at 375 West Jefferson Street, Dallas, Texas, insofar as Paragraph 15 of the lease of June 1, 1944, therein, is applicable and not otherwise.

This conveyance, covering a portion of said lease, in no manner disturbs the other portions of same, and said lease shall continue for the term provided so long as rent therefor is paid and shall be in force as to all provisions except paragraph fifteen.

Then follows the usual habendum clause contained in deeds. It is signed by L. W. Ray and acknowledged by him before a notary public, the notary's certificate thereto being in the form prescribed for deeds by Texas law.

Petitioners in their returns treated the $20,000 as gain from the sale of a capital asset and reported one-half thereof as taxable. Respondent, in his notice of deficiency, determined that the $20,000 was ordinary income and was 100 per cent taxable. Other adjustments made by respondent are not questioned by petitioners and are not at issue.

Under the Federal income tax law, to constitute "gain from the sale of a capital asset" the gain must result from the "sale or exchange" of "property." [1]

Did the transaction in question constitute a sale of property? If so, petitioners must prevail. It having been stipulated that all of the $20,000 represented gain to the petitioners, and that it was paid to acquire from them "their right, title and interest in and to the lease, in so far as paragraph 15 was concerned," if the rights so transferred constituted property, then there was a "sale" within the meaning of section 117.

The term "sale" in section 117 should be given its ordinary meaning. *Helvering* v. *William Flaccus Oak Leather Co.*, 313 U. S. 247. A sale in the ordinary sense is a transfer of property for a fixed price in money or its equivalent. *Gruver* v. *Commissioner*, 142 F. 2d 363. See also *Jones* v. *Corbyn*, 186 F. 2d 450.

For an agreed price of $20,000 petitioner transferred and relinquished his interest and ownership in and to the restrictive property rights granted him in paragraph 15 of the lease.

There remains only for our decision whether the subject matter of the sale or transfer was "property" in the hands of petitioner. We think it was.

As defined in Bouvier's Law Dictionary and supported by the numerous state and Federal authorities there cited:

The term "property" embraces every species of valuable right and interest, including real and personal property, easements, franchises, and hereditaments; * * *.

"Property" may be tangible or intangible. *Jones* v. *Corbyn, supra.*

The granting or relinquishment of a right relating to the use of property is the conveyance or transfer of a property right.

A lease of land is property and constitutes a capital asset in the hands of the leasehold owner and gain realized by him from its sale is capital gain. *Walter H. Sutliff*, 46 B. T. A. 446.

The amount received by the lessee from the owner for accelerated cancelation of a lease creates a capital gain since use and possession,

---

[1] The statute defines as capital assets *"property* held by the taxpayer" with certain exclusions that are not presently material [emphasis added]. Internal Revenue Code, section 117 (a) (1). Capital gain is the "gain from the sale or exchange of a capital asset * * *." Code, section 117 (a) (2) and (a) (4).

valuable property rights, are thereby transferred from the lessee to the owner. *Isadore Golonsky*, 16 T. C. 1450.

An agreement in a written lease which affects the use and enjoyment of the premises by the tenant, or is such as to benefit either the landlord or tenant by reason of his relation thereto, is a property right, being a covenant which runs with the land and is enforceable against not only the makers of the agreement, but their assigns. Thompson on Real Property, vol. 2, p. 282; Tiffany on Real Property (3d Ed.), vol. 1, p. 204–5. From the many Texas authorities sustaining this doctrine we cite: *Anderson* v. *Rowland* (Tex. Civ. App.), 44 S. W. 911; *Curlee* v. *Walker* (Tex. Sup. Ct.), 244 S. W. 497; *Goodrich* v. *Brubaker* (Tex. Civ. App.), 80 S. W. 2d 1047; *Thomson* v. *Dozier*, 168 S. W. 2d 319; see also *British-American Oil Co.* v. *Buffington* (C. A. 5), 116 F. 2d 363.

Among such restrictive covenants similar to the one here are: in *Anderson* v. *Rowland, supra,* the grantor in a conveyance obligated himself therein not to permit a saloon to be operated in any building then owned by him in the same block of the conveyed premises; the grantee was to use the purchased property to carry on a saloon, and the restriction was to prevent competition. Upon suit by grantee the court enjoined grantor and his subsequent grantee of another lot in the same block from operating a saloon therein.

In *Goodrich* v. *Brubaker, supra,* a covenant of grantee that property conveyed would not be used for business purposes was sustained.

A covenant in deed that grantee would not erect a building on one end of land conveyed within specified distance of boundary line was a "covenant running with the land," as it affected use of such land and pertained to and benefited use of adjoining land retained by grantors, and was a valid "covenant appurtenant to the land" retained. *Thomson* v. *Dozier, supra.*

In paragraph 14 lessor retained the right to lease to a variety store that portion of the building therein designated, but in such event lessee was given the option to cancel the lease. Paragraph 15 restricted lessor from renting to a variety store any portion of the building other than that specified in paragraph 14. So long as paragraph 15 remained in effect, petitioner was assured that no competitor engaged in the same business would be rented space in the building in which he was located, without his having the right to cancel the lease. With the restrictive rights in paragraph 15 relinquished, petitioner had no such assurance or protection.

That the restrictive right or covenant in paragraph 15 relating to petitioner's use and enjoyment of the rented premises was of benefit to him and that same was valuable and so regarded both by him and his lessor is evidenced by the substantial consideration paid for its re-

linquishment. That lessor's prospective purchaser recognized its validity and its binding effect upon him, should he become the owner of the property, and that it was of value is shown by his refusal to purchase the property unless it was relinquished.

Respondent argues that "if the right given in paragraph 15 be a property right, it was not the type of property the sale of which comes within the purview of section 117," because "in its final analysis it was tantamount to an agreement not to compete" and it has been held that income derived from an agreement not to compete is taxable as ordinary income, citing *Estate of John D. Beale*, 31 B. T. A. 966, affd. 82 F. 2d 268. That case is clearly distinguishable. There a corporation sold its assets and good will to another and part of the consideration was that certain stockholders of the seller would not for 5 years engage in the same business as the buyer. It was held that the agreement not to compete was "personal" and that "petitioners did not dispose of property or any capital asset in their agreement with Borden" but "merely agreed to refrain from exercising their individual rights to engage in business" in competition with the seller.

In the instant case there was no sale of a business and no personal agreement not to compete, but a covenant contained in a written lease of real estate relating to the use and enjoyment of the rented premises and restricting lessor from renting a portion of the building in which the premises were located to a competing business. This was, for the reasons heretofore given, one of the covenants which "run with the land" and a relinquishment thereof was a transfer or sale of property.

Respondent cites *Hort* v. *Commissioner*, 313 U. S. 28. There the Court held that a sum paid by a lessee to a lessor to be released from a long term lease constituted anticipated rents, and so ordinary income, in the hands of the lessor. Here there was no payment of any anticipated rent to the lessor.

Respondent says the transaction was not a "sale" but the "extinguishment" of a right, and cites *Hale* v. *Helvering*, 85 F. 2d 819; *United States* v. *Fairbanks*, 95 F. 2d 794; *Felin* v. *Kyle*, 102 F. 2d 349, and kindred cases. These cases are not in point and have no applicability here. They relate to the settlement of a note for less than face value, or the redemption of a bond or the extinguishment of a note upon the return of property, etc., in all of which it was held that no property was received and hence could not constitute a sale.

More nearly in point is *Jones* v. *Corbyn, supra*, where it was held that "cancelation" of an exclusive general insurance agency contract was a "sale" and transfer of a "capital asset" within the meaning of the income tax statute. See also *Starr Brothers, Inc.*, 18 T. C. 149.

We hold that the $20,000 received by petitioners was gain from the sale of a capital asset and taxable as such.

*Decisions will be entered under Rule 50.*