Joseph Roscoe v. Commissioner. B. Waldine Roscoe v. Commissioner. Harold A. Carr v. Commissioner. Margaret P. Carr v. Commissioner.
Roscoe v. Commissioner
Docket Nos. 36905-36908.
United States Tax Court
1953 Tax Ct. Memo LEXIS 240; 12 T.C.M. (CCH) 575; T.C.M. (RIA) 53181; May 25, 1953
Howell Ward, Esq., and Charles E. Pratt, Esq., for the petitioners. Frank C. Allen, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined the following deficiencies in income tax for the year 1947: Docket
No.
Petitioner
Deficiency
36905
Joseph Roscoe
$1,135.39
36906
B. Waldine Roscoe
1,149.65
36907
Harold A. Carr
1,134.97
36908
Margaret P. Carr
1,172.97
The issue in these consolidated proceedings is upon what grounds did petitioners Joseph Roscoe and Harold A. Carr, together, receive $25,345.40 more than two other stockholders on the sale of a like amount of corporate stock, and is this sum taxable as ordinary income or as capital gain. *241 Findings of Fact Some of the facts are stipulated and are so found. Joseph Roscoe and B. Waldine Roscoe, husband and wife, resided at Corpus Christi, Texas, in 1947. Their separate community property income tax returns were filed with the collector of internal revenue for the first district of Texas. Harold A. Carr and Margaret P. Carr, husband and wife, also resided in Corpus Christi, Texas, in 1947. They filed their separate community property income tax returns with the collector for the first district of Texas. Joseph Roscoe and Harold A. Carr will sometimes hereinafter be referred to as petitioners. Petitioners and their wives filed their returns on a cash basis. On September 1, 1944, petitioners formed the partnership of J. Roscoe Company, a real estate firm with offices in Corpus Christi. Both partners were licensed real estate agents and brokers. In April 1946 petitioners, together with Ed Goodfriend and E. B. Shellenberger, purchased 50 acres of land situated in Corpus Christi. Title to the property was taken in the name of Roscoe Development Company, Inc., trustee for purchasers. Goodfriend and Shellenberger were primarily engaged in the retail clothing business, *242 and their interest in this land was for investment purposes. On August 14, 1946, petitioners, Goodfriend and Shellenberger organized a corporation under the laws of Texas known as the Greater Corpus Christi Development Company, hereinafter referred to as the Corporation. The Corporation issued 120 shares of capital stock; 40 shares each to Goodfriend and Shellenberger and 20 shares each to Roscoe and Carr. The Roscoe Development Company, Inc., conveyed the 50 acres of land to the Corporation on August 15, 1946. The Corporation assumed a debt to the Guaranty Title & Trust Company for $87,500, secured by a mortgage, and also executed a vendor's lien note for $44,775, payable to petitioners, Goodfriend and Shellenberger. On September 1, 1946, the Corporation and the J. Roscoe Company entered into an agreement. The agreement in part is as follows: "1. The Corporation agrees to subdivide a fifty (50) acre tract recently purchased from Roscoe Development Company and to make ready said tract for sale thereof in city lots, said tract to be fully improved and developed with paved streets, sidewalks, sewers, water, gas and electric lines in a manner agreeable to the governing authorities *243 of the City of Corpus Christi, all of which improvements and engineering service necessary therefor shall be done at the expense of the Corporation. The partnership agrees to manage and supervise all details in connection with the subdividing of said land but shall bear no expense arising therefrom. "2. The Corporation gives to the Partnership the sole and exclusive right to sell any and all lots in the addition at a commission of ten (10%) per cent of the selling price of said lots, such right to remain in effect until all of the said lots have been sold. "3. The Corporation at its expense shall convey all said lots by Warranty Deed and shall furnish Policy of Title Insurance to buyers of said lots. "The Partnership shall pay all expenses in promoting the sale of said lots." The 50-acre tract was subdivided into 218 residential lots. In February 1947 T. M. Bell and Ralph Hendricks agreed to purchase 40 lots in the subdivision and they deposited the customary earnest money. Before the sale was completed Bell and Hendricks became interested in purchasing the entire subdivision. After some discussion, wherein the petitioners were the principal negotiators for the Corporation, *244 a plan was worked out whereby Bell and Hendricks would purchase the stock of the Corporation instead of the land itself. The effect of taxes was considered by the parties, and tax counsel was consulted during the negotiations. The 120 shares of corporate stock were sold for $121,179.06 on April 25, 1947. The stock was transferred, and Bell and Hendricks assumed the obligations of the Corporation. Eventually these obligations were paid. Also included in the stock exchange transaction was an agreement whereby the petitioners consented to cancel their sales agreement with the Corporation. There is no written record of this cancellation. The cash consideration for the stock was as follows: Goodfriend
40 Shares
$31,944.55
Shellenberger
40 Shares
31,944.55
Roscoe
Carr
40 Shares
57,289.96
Petitioners, together, received $57,289.96. Of this sum, $31,944.55 represented payment for 40 shares of the stock and $25,345.40 was additional compensation taxable as ordinary income. On his 1947 tax return Roscoe reported the sum of $28,457.44 as the sales price of the 20 shares of stock and the gain was treated as a long-term capital gain. Carr also reported the sale of *245 stock but he reported the sum of $26,838 as the sales price for the 20 shares and likewise treated the gain from the sale as a long-term capital gain. In respondent's determination of the deficiencies he decreased the gain reported on the sale of the stock and increased the petitioners' ordinary income as a result of adding the $25,345.40 to the partnership income. Opinion Both parties agree that the petitioners together received $25,345.40 more than the other two shareholders on the sale of the same amount of the Corporation's stock. Respondent contends that this additional sum was paid petitioners for their work in managing and supervising the subdivision of the 50-acre tract and for arranging the sale with Bell and Hendricks. Petitioners contend that the cash consideration received by them was exclusively paid for their shares of stock. In the alternative, they also contend that if any portion of the consideration was paid for the cancellation or termination of the exclusive contract the gain therefrom was a capital gain. A resume of the facts will facilitate a discussion of the legal problem. In form, Bell and Hendricks purchased corporate stock for $121,179.06; in substance, *246 they purchased the 50-acre tract for $253,454.06. This latter sum can be ascertained as follows: Note to Guaranty Title & Trust Co.
$ 87,500.00
Note to petitioners, Goodfriend and
Shellenberger
44,775.00
Cash payment for stock: 40 shares Goodfriend
$31,944.55
40 shares Shellenberger
31,944.55
40 shares petitioners
31,944.56
25,345.40
121,179.06
$253,454.06
It is something beyond a mere fortuitous coincidence that the excess of $25,345.40 which petitioners receive for the 40 shares of stock is exactly 10 per cent of the aggregate consideration exchanged for the land, and considering this in addition to the testimony presented to us, we are not inclined to believe that the consideration paid to petitioners was paid solely in exchange for their stock. While Roscoe testified that he "figured" his stock was worth more than the stock of the other shareholders, we have no evidence to support his conclusion. Stock is that type of property known as fungible goods. These shares held by petitioners were identical to those held by Goodfriend and Shellenberger. If petitioners' shares were worth more to them, the additional worth must have been based *247 on something other than the intrinsic value of the stock. There is ample testimony and the record is clear upon the fact that the partnership agreement with the Corporation for the exclusive sale of the lots was cancelled. However, there is no evidence to show that the extra money was paid Roscoe and Carr as consideration for the cancellation or termination of the contract with the Corporation. Goodfriend testified that he thought that petitioners should receive more money than the other shareholders. He based his opinion on two facts: first, that petitioners had a contract for the sale of the property, and, second, that petitioners were entitled to something for their work in improving the subdivision. In essence it was for these reasons that Roscoe himself thought that he and Carr were entitled to the additional money. In view of these reasons we can only conclude that the $25,345.40 was additional compensation to the petitioners and was not paid them specifically for the cancellation of their contract with the Corporation. It is not necessary for us to determine whether the disputed amount was paid as sales commissions, or was paid the petitioners for their work in managing and *248 supervising the subdivision. In either event the $25,345.40 was for services and was ordinary income and not capital gain. If, arguendo, we accede to petitioners' contention that the $25,345.40 was consideration for the cancellation of the sales contract, we can not follow their conclusion that the gain was a capital gain. While contracts are property, the decisions are to the effect that not all property rights constitute capital assets. Whether or not they are depends, at least in part, upon the nature of the income that would normally result from the fulfillment of the terms of the contract. See Starr Brothers, Inc., 18 T.C. 149, 151. Paraphrasing the words of the Supreme Court in Hort v. Commissioner, 313 U.S. 28, the disputed amount was essentially a substitute for sales commissions, which section 22 (a), I.R.C., especially characterizes as gross income. Therefore the $25,345.40 must be regarded as ordinary income. The respondent must be sustained. Decisions will be entered for the respondent.