CHURCH'S ENGLISH SHOES, LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43028. Filed April 21, 1955.

*Paul V. Wolfe, Esq.*, for the petitioner.
*James J. Quinn, Esq.*, for the respondent.

#### OPINION.

HARRON, *Judge:* The Commissioner determined a deficiency in income tax of $577.72 for the fiscal year ended June 30, 1947. The only

issue to be decided is whether the petitioner realized ordinary gain in the amount of $2,063.30 in connection with the discharge of an indebtedness to Church & Company, Ltd., of England under the facts set forth hereinafter. The sum of $2,063.30 is the difference between the dollar amount of a debt payable in pounds sterling, computed at the rate of exchange at the time the debt was incurred (1935), and the amount of dollars expended in 1947 to purchase pounds sterling to pay the debt. The facts have been presented by a stipulation which is adopted as our findings of fact.

The petitioner, a domestic corporation, filed its corporate income tax return for its fiscal year ended June 30, 1947, with the collector of internal revenue for the third district of New York. It maintained its books and records and reported its income on an accrual method of accounting. It is engaged in the business of selling imported shoes at retail. It carries on its business in New York City. It is a wholly owned subsidiary of a wholly owned subsidiary of Church & Co., Ltd., a foreign corporation having its principal office in England.

In the calendar year 1935, during the fiscal year ended June 30, 1936, the petitioner purchased shoes, on credit, from Church & Co., Ltd. The invoice cost of the shoes in pounds sterling was 2,482-3-2. The rate of exchange on the dates of the purchases of shoes in 1935 was $4.86 per pound sterling. Accordingly, the cost of the merchandise converted into dollars was $12,063.30. Petitioner was allowed credit for the purchases by the seller who extended the credit from year to year until petitioner paid the debt in 1947.

Petitioner took the merchandise into its inventory and cost of goods sold at cost of $12,063.30. The merchandise was entirely sold, in the usual course of petitioner's business, no later than June 30, 1937. Petitioner operated its business at a loss in its fiscal years ending on June 30 of 1936 and 1937, the operating losses amounting to $21,319.49 and $18,915.96, respectively. Petitioner sustained losses from its operations in each year thereafter until the taxable year. As of June 30, 1946, its accumulated losses from operations amounted to $242,531.13.

In 1947 the rate of exchange was $4.02⅞ per pound sterling. In 1947, for the sum of $10,000, petitioner acquired 2,482-3-2 pounds sterling which it transferred to Church & Co., Ltd., in satisfaction of the indebtedness which was incurred in 1935.

The difference between the dollar amount of the indebtedness incurred in 1935, payable in pounds sterling, and the amount of dollars expended in 1947 to pay the indebtedness in pounds sterling is $2,063.30.

The petitioner contends that no *taxable* gain was realized. In the alternative, petitioner contends that if it is held that *taxable* gain was realized, it was long-term capital gain.

The petitioner contends that the question is controlled by *Bowers* v. *Kerbaugh-Empire Co.*, 271 U. S. 170, because the entire transaction in the merchandise purchased in 1935 involved loss which exceeded and absorbed the gain of $2,063.30 which appears to have been realized in that part of the entire deal which culminated in the purchase of pounds sterling in 1947 at a lower exchange rate than existed in 1935.

In *Kerbaugh-Empire Co.*, the Supreme Court took the view that where the basic transaction involved loss, and where the foreign exchange part of the whole transaction involved gain which only served to reduce but did not wipe out the amount of loss, the gain realized from the foreign exchange purchase was not *taxable* because the gain merely lessened the loss sustained on the basic transaction.

In *Kerbaugh-Empire Co.*, the taxpayer borrowed marks from a German bank, during years before 1921, and gave its notes in return, to finance construction work of a subsidiary in Germany. The borrowed funds were expended and, because of World War I, were lost by the subsidiary, which was allowed losses in its income tax returns; such losses exceeding taxable income. In 1921, the taxpayer paid its indebtedness to the German bank; settlement was based on an exchange rate of 2½ cents per mark. Due to the difference between the value of the mark at the time the indebtedness was incurred and at the time the indebtedness was paid, fewer dollars were used to buy marks to pay the debt. The Commissioner determined that the "gain" was taxable. That determination was reversed by the Supreme Court because "The result of the whole transaction was a loss."

In this case, petitioner has not shown that the merchandise which it purchased in 1935 was sold at a loss, if it was. Petitioner only shows that there was an operating loss sustained for all of its business for each fiscal year ending on June 30, 1936 and 1937. Such net operating losses may have been the result of unprofitable transactions other than sales of the goods bought in 1935, in question. In *Kerbaugh-Empire Co.*, the evidence established that construction work which was financed by the use of foreign exchange resulted in a loss which exceeded the gain realized upon the purchase of foreign exchange used to pay notes given to obtain financing. We do not have here a like situation in fact, and conclude that *Kerbaugh-Empire Co.*, *supra*, does not apply to the facts of this case.

The petitioner realized gain in its fiscal year ending on June 30, 1947, on a transaction in 1947 involving the purchase of foreign exchange,

and the proper method of accounting is to account for any profit or loss in the payment for foreign exchange in and as a transaction which is separate from the purchase and sale of the shoes. *The Joyce-Koebel Co.*, 6 B. T. A. 403, 406; *Bernuth Lembcke Co.*, 1 B. T. A. 1051, 1054. There were two transactions, for accounting and tax purposes, one involving the purchase and sale of shoes, the other a "speculation" in foreign exchange. The shoes were sold in the fiscal years ending in 1936 and 1937. Gain or loss from such sales was to be accounted for in the years when the shoes were sold. The "speculation" in foreign exchange took place in 1947, and gain is to be accounted for in the fiscal year ending in 1947. Taxation is "on the basis of annual returns showing the net result of all the taxpayer's transactions during a fixed accounting period * * *." *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359. Under this rule, the petitioner must be taxed upon the gain it realized in 1947 as a result of its "speculation" in foreign exchange. The respondent properly included the gain of $2,063.30 in petitioner's income for its 1947 fiscal year. *Willard Helburn, Inc.*, 20 T. C. 740, affd. 214 F. 2d 815.

Petitioner makes an alternative contention that the gain in question should be taxed as capital gain. There is no basis for this contention; there was no sale or exchange of a capital asset involved. The dealing in foreign exchange did not involve any purchase or borrowing of foreign exchange in 1935 when the shoes were purchased. Cf. *Willard Helburn, Inc., supra*. The parent of petitioner sold the goods to petitioner on an open account; the transaction involved only an extension of credit throughout. When petitioner bought the shoes in 1935, it properly accounted for the purchase on its books by stating the cost of the merchandise, the amount of the account payable, in dollars in an amount equivalent to pounds sterling at the then rate of exchange. For some reason which is not explained by the record, petitioner did not have to make any payment of any drafts in 1935 to get bills of lading. Cf. *Willard Helburn, Inc., supra*, p. 741. Therefore, it did not actually "invest" in any foreign exchange in 1935, which "investment" might provide the basis for the capital gain in 1947, for which petitioner contends. When petitioner purchased pounds sterling in 1947, in order to pay at that time its account payable, the purchase of foreign money was no more than a usual and recurring transaction in the ordinary course of its business. Cf. sec. 117 (a) (1), 1939 Code. We can conclude only that ordinary gain was realized in 1947, and reject petitioner's contention.

Reviewed by the Court.

*Decision will be entered for the respondent.*

JOHNSON, *J.*, dissents.