MANSFIELD JOURNAL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60276. Filed January 29, 1959.

*Francis E. Kane, Esq.,* and *Morris Berick, Esq.,* for the petitioner.
*Frank W. Hardy, Esq.,* for the respondent.

OPINION.

HARRON, *Judge:* The question is whether payments received by petitioner in 1951 and 1952 from publishers, who were allowed to purchase paper from Coosa River under petitioner's newsprint contract with Coosa River, constitute ordinary income or capital gain. The payments in dispute amounted to $73,617.43, in 1951, and $22,237.83, in 1952.

Petitioner contends that the newsprint contract with Coosa River was a capital asset within the definition of section 117(a)(1), 1939 Code, that the assignments under that contract constituted sales of parts of the capital asset, and that the receipts from the assignees were long-term capital gain under section 117(a)(4). Petitioner contends, further, that such gain is excludible from its excess profits tax net income under section 433(a)(1)(C). Petitioner makes the

additional contention that the gain represented "abnormal income" so as to be excludible from excess profits net income under section 456.

It is the respondent's position that the petitioner entered into the 10-year newsprint contract with Coosa River for the purpose of assuring itself an adequate supply of newsprint at a stable price; that such contract was made in the course of and was an integral part of the operation of petitioner's business; and that in entering into the contract, petitioner was protecting its inventory of newsprint paper. Respondent argues that the issue is controlled by the rationale of *Corn Products Refining Co.* v. *Commissioner*, 350 U.S. 46.

Our conclusion is that the respondent's determination is correct.

In the operation of petitioner's business it is essential that it maintain an inventory of newsprint paper. To do so, at the most reasonable cost to itself, it is highly desirable to have long-term contracts with papermills for the purpose of obtaining an assured supply of paper. Obtaining and having such contracts is an integral part of the conduct of petitioner's ordinary trade and business. Such contracts not only provide a continuous inventory of paper but they also serve to establish a stable basis for arriving at the price to be paid for paper. Otherwise, it is necessary to go into the open market to purchase paper, if inventories run short, at prices which generally are considerably higher and subject to more fluctuation than are the prices provided by long-term contracts. The record shows that in the publishing business it is customary to operate under long-term contracts for newsprint paper, and that petitioner's purpose in entering into the newsprint contract with Coosa River was to assure for itself and a related corporation, which also published a newspaper, a continuous supply of paper over a long period.

In the 3 transactions entered into in 1951 which give rise to the issue to be decided, petitioner arranged for Brush-Moore to take, in 1951, 400 tons of the newsprint which petitioner had a right to purchase under its contract with Coosa River; for Beacon, in 1951, to take 180 tons; and for Lorain County Printing Company to take 150 tons. Thus, the 3 concerns agreed to take 730 tons out of the tonnage which was available to petitioner under petitioner's contract with Coosa River. The form of the transactions involved the execution of two documents, one an "Agreement of Partial Assignment of Newsprint Contract," and the other, a "Memorandum of Agreement." The latter agreement contained the terms under which the so-called assignee agreed to pay consideration to petitioner, which consideration petitioner received. The two instruments, in our opinion, must be considered together. They constituted a sale in each instance by petitioner of part of the newsprint petitioner was obligated to pur-

chase. In considering the question to be decided, and all of the evidence before us, we are concerned with the substance of the transactions, rather than the form, and the caption of one of the documents used, namely, "Partial Assignment of Newsprint Contract," is not controlling. The so-called assignment of part of the newsprint contract was no more than an assignment of part of the quota of newsprint which petitioner was obligated to purchase, and it served to effectuate delivery thereof by Coosa River to each assignee rather than to petitioner.

In substance, therefore, petitioner was dealing in its newsprint, for which it had contracted. The assignees, or purchasers thereof, were purchasing newsprint. The total consideration which each paid consisted of the sum of two payments; one, the amount per ton called for under petitioner's contract with Coosa River, which the purchaser paid to Coosa River, and the second, the amount per ton which the purchaser agreed to pay and paid to petitioner. Petitioner was not released in any respect from any of its obligations under its contract with Coosa River.

We are unable to conclude that the transactions, in substance, involved sales or exchanges of capital assets of petitioner. The transactions related to petitioner's inventories of paper and were anticipatory arrangements under which petitioner had deliveries made to others. Such transactions come within the rationale of *Corn Products Refining Co.*, *supra*, where it was held that transactions relating to inventories which are an integral part of the taxpayer's business do not result in the realization of capital gains and losses, even though the commodity involved appears to come within the literal wording of the definition of capital assets. See also *America-Southeast Asia Co.*, 26 T.C. 198; and *Church's English Shoes, Ltd.*, 24 T.C. 56, affd. 229 F. 2d 957.

We agree with the respondent's contention that the transactions in question were an integral part of the conduct of petitioner's business, which included the purchase of paper, and were in the nature of a hedge. In petitioner's long-term contract with Coosa River, the provisions controlling the calculation of prices to be paid per ton of paper during the term of the contract tended to provide for a comparatively stable price for paper and to give petitioner some protection against market fluctuations. The existence of such price provisions in the Coosa River contract enabled petitioner to make a profit in the transactions in dispute. Thus, there is a close resemblance to a hedge. Furthermore, at the same time that petitioner was disposing of its Coosa River newsprint, it was purchasing paper from Abitibi Sales Co., to whom it was under no obligation. Hence, the purchases from Abitibi offset the sales of the Coosa River newsprint.

Such arrangements are typical of a hedging transaction. See *Stewart Silk Corporation*, 9 T.C. 174. Furthermore, it cannot be said that the three transactions in question constituted speculation on petitioner's part. See G.C.M. 17322, XV–2 C.B. 151.

Petitioner relies on *Commissioner* v. *Covington*, 120 F. 2d 768, and *Jones* v. *Corbyn*, 186 F. 2d 450. The doctrine of these cases has been overruled by *Corn Products Refining Co., supra*. Consideration has been given to other cases cited by petitioner, namely, *Louis W. Ray*, 18 T.C. 438, affd. 210 F. 2d 390; *McCue Bros. & Drummond, Inc.*, 19 T.C. 667, affd. 210 F. 2d 752; and *Isadore Golonsky*, 16 T.C. 1450, affd. 200 F. 2d 72. These cases, on their respective facts, are distinguishable from the instant case.

It is held that the gains realized by petitioner in 1951 and 1952 from the transactions in question were not capital gains, and that they represent ordinary income.

We consider, next, the alternative contentions of petitioner, whether the gains realized in 1951 and 1952 are excludible in determining excess profits net income under either section 433(a)(1)(C), or section 456, 1939 Code.

Since we have concluded that the gains were not capital gains, it follows that the provisions of section 433(a)(1)(C) do not apply.

Section 456(a)(2) defines the classes of income which come within the definition of abnormal income. See also sec. 40.456–2, Regs. 130. Our conclusion is that the income which petitioner realized from the transactions involved here does not qualify as abnormal income.

The respondent's determination is sustained.

*Decision will be entered for the respondent.*