STEVEN VOLOUDAKIS AND KATHERINE VOLOUDAKIS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 62444. Filed March 12, 1958.

*William H. Kinsey, Esq.,* and *James R. Moore, Esq.,* for the petitioners.

*John D. Picco, Esq.,* for the respondent.

WITHEY, *Judge:* The respondent determined deficiencies in the income tax of petitioners and additions to tax under section 291 (a) and section 294 (d) (1) (A), (d) (1) (B), and (d) (2) of the Internal Revenue Code of 1939 for the indicated years as follows:

| Year | Deficiency | Additions to tax | | | |
|---|---|---|---|---|---|
| | | Sec. 291 (a) | Sec. 294 (d) (1) (A) | Sec. 294 (d) (1) (B) | Sec. 294 (d) (2) |
| 1949 | $1,868.66 | $467.16 | | $4.00 | $145.95 |
| 1950 | 3,241.66 | | $387.47 | | 258.31 |
| 1951 | 3,635.80 | | | 52.50 | 261.78 |
| 1952 | 4,093.68 | 1,023.44 | | 75.00 | 254.63 |
| 1953 | 5,899.84 | | | 97.50 | 397.64 |

The issues presented for our decision are the correctness of the respondent's action in determining that (1) amounts received by petitioners from Pacific Telephone & Telegraph Company (hereinafter referred to as Pacific) during the years in issue constituted ordinary income taxable under section 22 (a) of the 1939 Code; (2) petitioners are liable for additions to tax under section 291 (a) for 1949 and 1952; and (3) petitioners are liable for additions to tax under section 294 (d) (1) (A) for 1950, under section 294 (d) (1) (B) for 1949, 1951, 1952, and 1953, and under section 294 (d) (2) for each of the taxable years in issue.

An additional issue presented by the pleadings was abandoned by petitioners at the hearing.

Some of the facts have been stipulated and are found accordingly.

Petitioners Steven Voloudakis and Katherine Voloudakis are husband and wife and residents of Portland, Oregon. Petitioners filed joint income tax returns for the years 1949, 1950, 1951, 1952, and 1953 with the director of internal revenue for the district of Oregon.

*Issue 1.*

FINDINGS OF FACT.

During the years in issue, petitioners, as partners, owned a dry-cleaning establishment doing business as Stevens Cleaners and Hatters. In addition, Steven Voloudakis (hereinafter referred to as petitioner or Voloudakis) also owned 99.6 per cent of the outstanding stock of Stevens Cleaners, Inc., an Oregon corporation engaged in the dry-cleaning and used clothing business.

Prior to 1946, petitioner conducted his cleaning, dyeing, and laundry operations at 1334 S. W. Morrison Street, Portland, Oregon, occupying approximately one-eighth of the premises known as the Sweeny Building or the Sweeny Block.

On March 5, 1946, petitioners executed a lease with the Sweeny Investment Company (hereinafter referred to as Sweeny), owner of the Sweeny Building, for the entire premises comprising the Sweeny Block, subject only to a prior lease to Robert Pantley of a portion of the premises. The lease to Robert Pantley had approximately 6 months to run.

The lease executed by Sweeny and petitioners was for a term of 10 years commencing with the surrender of the premises by all previous tenants except Robert Pantley. The rental provided in the lease was $1,600 per month, payable on the first day of each calendar month. The lease contained the standard provisions normally appearing in leases of business property concerning such matters as the maintenance and alteration of the premises, the liability of the lessee for

negligence, destruction of the premises, insurance, assignment and subletting, etc. Petitioner occupied the entire premises pursuant to the foregoing lease of March 5, 1946, made certain improvements on the property and operated a cleaning establishment thereon for approximately 1 year.

Meanwhile, Pacific was attempting to locate available office space in the downtown Portland area, and retained Churchill Cook, a realtor, as its agent for this purpose. Churchill Cook contacted petitioner regarding the need of Pacific for additional space and negotiations for the entire Sweeny Block ensued. On January 17, 1947, Voloudakis signed and sent the following letter to Cook:

Reference is made to our current conversation relative to your procuring for me a sub-tenant who will sub-lease the entire premises known as the Sweeney Block, said premises being further described as the one story building situated on Lots numbered 1 to 8 inclusive in Block South half (S ½) of K in Portland, Oregon, and on which premises I hold a lease expiring in May 1956.

In connection therewith, I agree to vacate and to sub-lease the entire premises in an "as is" condition for the full term of my lease at and for a gross rental at the rate of $50,000 per year, which rental is to be paid in monthly installments of ½2th each month, beginning with the date that the premises are vacated by the undersigned, which will be sixty (60) days from the date of the execution of the lease.

It is further agreed that your prospective tenant at the time of executing said lease will deposit with me the sum of $35,000.00, which deposit shall represent a partial payment of rent in the amount of $1500.00 per month for the first 24 months of said lease. While an advance rental at the rate of $1500.00 per month would equal the sum of $36,000.00, the $35,000 so paid represents this amount less $1000.00 interest deducted therefrom for the usage of same. The balance of the rental due during the first 24 months shall be paid in monthly installments of $2666.00.

I further agree to vacate 75% of the entire premises within sixty (60) days after the date of the execution of said lease and further agree that the remaining 25% of said premises will be vacated not later than July 30th, 1947.

This agreement shall be valid until February 28th, 1947 in order to permit you and your principals time to accomplish the necessary arrangements to conclude the sub-lease.

This agreement is predicated on the understanding that your principals have viewed the property, have expressed their interest in sub-leasing said premises and that the proposed sub-tenant is a national concern rated at better than One million dollars.

It is further understood and agreed that whereas the undersigned entered into a lease of the above mentioned property in March, 1946, with the Sweeney Investment Company, a corporation, and it is provided in said lease that the same shall not be sub-let or assigned without the written consent of the lessor, Sweeney Investment Company; that this agreement is made contingent upon getting such consent; and if the undersigned is not able to secure said consent, or if the lessor refuses to give its written consent, this entire agreement shall be null and void; and it is further understood and agreed that the parties to whom the undersigned sub-lets or assigns their rights in the lease to this property will, in occupying and using said property, comply with and assume the obligations of the undersigned

regarding the occupancy and use of said property, as contained in said lease from the Sweeney Investment Company to undersigned.

The foregoing letter was drafted by Churchill Cook for the purpose of committing petitioners to an offer.

On April 7, 1947, the petitioners signed and sent the following letter to Pacific:

Reference is made to our lease agreement wherein you are leasing the entire one story building situated on Block (S ½) "K" in Portland, Oregon.

In connection therewith and with specific attention to the advance rental in the amount of $35,000, to be paid at the time of consummating this lease, please be advised this will authorize and request you to pay directly to G. C. COOK the sum of $10,500 from the advance rent to be paid me at that time, said payment to G. C. Cook being payment in full for his services in connection therewith.

This letter was also drafted by Churchill Cook.

Negotiations between the parties culminated on April 8, 1947, with the consent of Sweeny, the original lessor, as required by the lease executed March 5, 1946, and with the execution of a three-way agreement by Sweeny, Pacific, and petitioners. The agreement, dated April 8, 1947, was for a term of 9 years (the remainder of the unexpired term under the lease of March 5, 1946) commencing with the surrender of 70 per cent of the premises. The rental to be paid by Pacific was $50,000 per year, payable monthly at the rate of $1,900 to Sweeny and $2,266.67 to Voloudakis. The agreement describes petitioners as lessors and Pacific as lessee, and contains the following provisions:

WHEREAS, the Lessee desires to lease said premises;

Now, THEREFORE, for and in consideration of the covenants and agreements of the parties hereto as hereinafter set forth, it is hereby agreed as follows:

1. The Lessors hereby lease to the Lessee all of the property above described for a term of nine (9) years commencing on the date when possession of at least seventy per cent of said premises is delivered to the Lessee, which date shall be not later than May 1, 1947. * * *

\* \* \* \* \* \* \*

22. If the Lessee shall fail to pay any rent or other payments provided for in this lease, or if the Lessee shall default in the performance of any of its covenants in this lease, and if such default is not remedied within thirty (30) days after written notice thereof, Lessors without further notice or demand may enter upon and repossess the premises and expet [sic] the Lessee and those claiming under it and remove its effects without being deemed guilty of trespass and without prejudice to any remedies which may be used for arrears of rent or preceding breach of covenant.

In accordance with the provisions of the foregoing agreement the premises were vacated by petitioner and possession was taken by Pacific. The agreement expired by its terms on or about May 1, 1956.

Pacific negotiated a new lease directly with Sweeny for possession of the premises after May 1, 1956.

The payments made by Pacific to petitioner under the agreement of April 8, 1947, aggregated $237,130.41. The amounts received by Voloudakis under the agreement of April 8, 1947, were reported by petitioners on their partnership returns as long-term capital gains resulting from an installment sale, with the following explanation of the transaction appended:

On April 8, 1947, taxpayer entered into an agreement with the Pacific Telephone and Telegraph Company, whereby the company would purchase the taxpayer's interest in the property leased by the taxpayer from Sweeney Investment Co., Spokane, Washington. Taxpayer had previously entered into a lease on March 1, 1946 for a period of ten years with Sweeney Investment Co. for the property which was now made available to the Pacific Telephone and Telegraph Co., for a total price of $237,130.41 which payments are to be made by that company to the taxpayer from April 8, 1948 to March 6, 1956. This transaction constitutes a sale of the original lease with the profit being reported on the installment plan as less than 30% of the sales price was received during the initial year 1947.

The amounts reported by petitioners as payments received from Pacific during the years in issue were as follows:

| Year | Amount received | Gain as computed on returns | Taken into account on joint return, 50 per cent as long-term capital gains |
| --- | --- | --- | --- |
| 1949 | $21,200.04 | $16,785.21 | $8,392.60 |
| 1950 | 27,200.04 | 21,535.73 | 10,767.86 |
| 1951 | 27,200.04 | 21,535.73 | 10,767.87 |
| 1952 | 27,200.04 | 21,535.73 | 10,767.87 |
| 1953 | 27,200.04 | 21,641.99 | 10,821.00 |

The Commissioner determined that the foregoing amounts represented rental income rather than proceeds of an installment sale of petitioners' leasehold, and allowed amortization of certain leasehold improvements and of commissions and legal fees. The respondent accordingly determined petitioners' net rental income for each of the years in issue to be as follows:

| Year | Gross rent received | Allowable amortization | Net rent |
| --- | --- | --- | --- |
| 1949 | $21,200.04 | $5,063.15 | $16,136.89 |
| 1950 | 27,200.04 | 5,063.15 | 22,136.89 |
| 1951 | 27,200.04 | 5,063.15 | 22,136.89 |
| 1952 | 27,200.04 | 5,063.15 | 22,136.89 |
| 1953 | 27,200.04 | 5,063.15 | 22,136.89 |

OPINION.

The respondent has determined that the agreement executed by petitioners, Sweeny, and Pacific on April 8, 1947, created a sublease between petitioners and Pacific, and that the amounts received by

Voloudakis from Pacific during the years in issue constitute rental payments taxable as ordinary income under section 22 (a) of the 1939 Code.

Petitioners contend that the transaction resulted in a sale to Pacific of their leasehold interest in the premises known as the Sweeny Block and that the proceeds received pursuant thereto represent long-term capital gain.

In support of their position petitioners rely on our decisions in *Walter H. Sutliff*, 46 B. T. A. 446; *Isadore Golonsky*, 16 T. C. 1450, affd. 200 F. 2d 72, certiorari denied 345 U. S. 939; *Louis W. Ray*, 18 T. C. 438, affd. 210 F. 2d 390, certiorari denied 348 U. S. 829; *McCue Bros. & Drummond, Inc.*, 19 T. C. 667, affd. 210 F. 2d 752, certiorari denied 348 U. S. 829.

In those cases we held that payments received by a lessee in return for the cancellation, surrender, or sale by him of his leasehold interest are received for the relinquishment of a capital asset and may be reported as capital gain. In *Walter H. Sutliff, supra*, the taxpayer as lessee joined with the owner in fee of the premises in a deed conveying the property to a purchaser. We there rejected the contention of the Commissioner that a portion of the consideration received by the taxpayer was a substitute for the rental payments which he might receive throughout the unexpired term of his lease, and held that he had disposed of his leasehold interest in the property and was entitled to report the proceeds as capital gain.

In *Isadore Golonsky, supra*, we held that an amount received by the lessee from the owner of the premises for the accelerated cancellation of a lease constituted capital gain since the tenant's right to the use and possession of the unexpired term was a property right which thereby was transferred by him to the lessor.

*Louis W. Ray, supra*, involved the relinquishment by the lessee of a restrictive covenant contained in the lease which was preventing the owner from selling the reversion. We held that the transaction constituted a sale of a capital asset under section 117 of the 1939 Code.

In *McCue Bros. & Drummond, Inc., supra*, the taxpayer occupied business premises under a lease which expired during the taxable year in question, but it continued in possession as a statutory tenant under the New York emergency rent control laws. As a statutory tenant the taxpayer had a right to remain in possession of the premises so long as it paid a reasonable rental. Its landlord paid it $22,500 to vacate and surrender the premises. We upheld the taxpayer's contention that it had transferred property rights to its landlord in exchange for the $22,500 received and that the amount realized from the sale represented capital gain.

In each of the foregoing cases the lessee sold, transferred, conveyed, or relinquished his leasehold rights for a stated consideration under a written instrument which clearly demonstrated the intention of the parties to effect an absolute transfer or sale of the rights of the lessee in the property. Such an agreement is lacking here. The three-way agreement executed by petitioners, Sweeny, and Pacific is couched throughout in the language of a lease or sublease. Petitioners are consistently referred to as lessors, Pacific is called the lessee, the monthly payments payable by Pacific to Voloudakis are described as rental, and the agreement is termed "this lease." Further, the instrument contains the covenant that "[t]he Lessors hereby lease to the Lessee all of the property above described for a term of nine (9) years." It further provides, consistent with a landlord-tenant relationship, for reentry of petitioner and reversion of the premises to him in case of Pacific's default.

In addition, the preliminary negotiations between Voloudakis and Pacific indicate that the intention of the parties was to create a lease arrangement rather than a sale. In the letter sent by petitioner to Churchill Cook, he offered "to vacate and to sub-lease the entire premises in an 'as is' condition for the full term of my lease at and for a gross rental at the rate of $50,000 per year, which rental is to be paid in monthly installments of $\frac{1}{12}$th each month." In their letter to Pacific, petitioners referred to "our lease agreement wherein you are leasing the entire one story building," and suggested the payment of "advance rental" of $35,000.

Both the terms of the agreement executed on April 8, 1947, and the negotiations preceding its execution indicate that petitioners and Pacific intended to and did create a relationship of landlord and tenant.

Further, petitioner, in describing his understanding of the purpose and effect of the transaction occurring April 8, 1947, did not state that he intended to sell his interest in the premises. His testimony on this point was indefinite and unresponsive. We are unable to find either from the agreement involved or from the circumstances surrounding its execution, that petitioners sold, transferred, or intended to sell or transfer their leasehold interest in the Sweeny Building. As we view the agreement in question, the clear import of the instrument is that the original lease of March 5, 1946, continued in existence for the duration of its term and that petitioners retained a continuing interest in the premises during its existence.

The provisions for the payment to petitioners of the agreed rental present a further point of distinction between the instant case and those on which petitioners rely. The three-way agreement of April 8,

1947, provided for the leasing to Pacific of the Sweeny Building for a term of 9 years at an annual rental of $50,000, payable $1,900 per month to Sweeny and $2,266.67 per month to petitioners. However, in each of the decisions of this Court cited by petitioners in support of their position, the consideration received by the lessee in exchange for his leasehold interest was in the form of a cash payment, thereby clearly establishing a sales transaction. Since by the nature of the transaction here in issue petitioner received the consideration in equal monthly installments over a 9-year period, it would appear that no reason for the extension of capital gains treatment under section 117 (a) and (j) of the 1939 Code exists. Consequently, we are of the opinion that the situation here presented is sharply distinguishable from the facts involved in our decisions in *Walter H. Sutliff; Isadore Golonsky; Louis W. Ray;* and *McCue Bros. & Drummond, Inc.,* all *supra.*

The petitioners insist that, under the applicable principles of the law of real property prevailing in Oregon, the transaction in question resulted in an assignment of the lease by petitioners to Pacific, rather than a sublease, with the result that petitioners disposed of the remainder of the leasehold term, retained no rights or obligations under the original lease, and "stepped out of the picture." However, petitioner points to no Oregon statute or decision, and we find none, which would alter the application of common law principles to the issue presented. At common law, an assigning lessee does not remain liable to his landlord for rent or for the performance of any of the covenants of the lease. *Moline* v. *Portland Brewing Co.,* 73 Ore. 532, 144 Pac. 572; 1 Tiffany, Real Property, sec. 124 (3d ed. 1939); 32 Am. Jur., Landlord and Tenant, secs. 313, 314, 318; I American Law of Property, p. 310. Under a sublease, however, the lessee does not dispose of his entire term under the lease and remains liable to his landlord for the payment of rent and for the performance of the other covenants of lease, unless specifically released therefrom. See Tiffany, *op. cit. supra,* p. 202. Here, we find nothing in the agreement of April 8, 1947, which either specifically or by implication indicates an intent on the part of Sweeny to release or discharge petitioners from their liabilities as tenants under the original lease.

Since the parties to the agreement in controversy did not eliminate the petitioners and substitute Sweeny in their place, the normal incident of an assignment of lease did not occur. See Tiffany, *op. cit. supra,* p. 197; I American Law of Property, p. 310. Petitioners also retained under the agreement a right of reentry and the ousting of Pacific for condition broken. If a complete assignment had resulted from the execution of the foregoing agreement, petitioners would have retained no interest in the premises but instead would have been

relegated to their contractual remedies in the event of a breach. The original lease agreement executed by petitioners and Sweeny on March 5, 1946, was not canceled but continued in force, and petitioners remained liable thereunder. We are of the opinion that the transaction consummated on April 8, 1947, was a sublease, rather than an assignment, and we accordingly hold that the amounts received by petitioner from Pacific during the years in issue constitute rental income taxable under section 22 (a) of the 1939 Code.

## *Issue 2.*

### FINDINGS OF FACT.

Petitioners' returns for 1950, 1951, and 1953 were timely filed, but their returns for 1949 and 1952 were not filed until August 17, 1954. Requests to extend the time for filing the 1949 return until September 15, 1950, were approved by the respondent.

### OPINION.

Petitioners did not attempt to introduce evidence relating to their failure to file timely returns for 1949 and 1952, and on brief they have not questioned the respondent's determination of additions to tax for failure to file timely returns pursuant to section 291 (a) of the 1939 Code. Accordingly, the respondent's determination is sustained.

## *Issue 3.*

### OPINION.

The petitioners object to the determination by the respondent of additions to tax pursuant to section 294 (d) (1) of the 1939 Code for failure to file a declaration of estimated tax or pay installments of estimated tax declared, together with the concurrent determination under section 294 (d) (2) of the Code of additions to tax for substantial underestimation of estimated tax for each of the years in issue. Petitioners' contention that additions to tax should not be determined under both section 294 (d) (1) and section 294 (d) (2) for any one year is without merit. We have held that as a matter of law additions to tax may properly be imposed under both of the foregoing sections of the 1939 Code for the same taxable year. *G. E. Fuller*, 20 T. C. 308, affd. 213 F. 2d 102; *Harry Hartley*, 23 T. C. 353; *Charles M. Kilborn*, 29 T. C. 102. The respondent's determinations with respect to additions to tax under section 294 (d) (1) and section 294 (d) (2) of the Code for each of the years in issue are sustained.

*Decision will be entered for the respondent.*