Frederick V. Johnson and Loretta Johnson v. Commissioner. William E. Barto and Gwenneth Barto v. Commissioner.
Johnson v. Commissioner
Docket Nos. 84985 and 84986.
United States Tax Court
T.C. Memo 1962-209; 1962 Tax Ct. Memo LEXIS 101; 21 T.C.M. (CCH) 1126; T.C.M. (RIA) 62209; August 30, 1962
James Harper, Esq., 700 First American National Bank Bldg., Duluth, Minn., for the petitioners. Willard J. Kiser, Jr., Esq., for the respondent. SCOTT
Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in the income tax of petitioners for the year 1956 and additions to the tax under section 6654 of the Internal Revenue Code of 1954 for 1956 and 1957 in the following amounts: Additions to tax
under sec. 6654,
Docket No.
Petitioners
Deficiency
I.R.C. 1954
Total
84985
Fredrick V. Johnson and Loretta Johnson
$5,946.08
1956
$ 15.96
1957
132.30
$6,094.34
84986
William E. Barto and Gwenneth Barto
6,445.91
1956
16.73
6,462.64
*102 The issue for decision is whether the transaction consummated in June 1955 between Arrowhead Equipment Company, a partnership in which petitioners Frederick V. Johnson and William E. Barto were partners, and Moland Brothers Trucking Company with respect to 35 truck trailers was a sale or lease. Petitioners do not contest respondent's determination of additions to the tax under section 6654 of the Internal Revenue Code of 1954 if respondent is sustained on the primary issue. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, Fredrick V. Johnson and Loretta Johnson, husband and wife residing in Duluth, Minnesota, filed a joint Federal income tax return for the taxable year ended December 31, 1956, with the district director of internal revenue at St. Paul, Minnesota. Petitioners, William E. Barto and Gwenneth Barto, husband and wife residing in Duluth, Minnesota, filed a joint Federal income tax return for the taxable year ended December 31, 1956, with the district director of internal revenue at St. Paul, Minnesota. At all times material hereto, petitioners Fredrick V. Johnson and William E. Barto (hereinafter *103 referred to as petitioners) were the sole partners in a partnership known as the Arrowhead Equipment Company (hereinafter referred to as Arrowhead). Arrowhead filed its partnership returns of income for the taxable years ended February 29, 1956, February 28, 1957, and February 28, 1958, with the district director of internal revenue at St. Paul, Minnesota. Arrowhead was formed as a partnership in 1953. Its business was the sale of truck trailers and it did not customarily lease trailers. Arrowhead's usual steps in consummating a sale of a trailer were to convince the customer of his need for the trailer, agree on a sales price, get the customer to sign the sales order, deliver the trailer, and collect the money or arrange financing, if required. Arrowhead maintained a line of credit with the First and American National Bank of Duluth, Minnesota to finance its trailer sales. Most of Arrowhead's trailer sales were financed. Prior to June 20, 1955, Arrowhead and Moland Brothers Trucking Company (hereinafter referred to as Moland) began negotiations through which both parties wished to consummate a sale by Arrowhead to Moland of 35 trailers. Moland customarily bought its equipment. *104 Sometime prior to June 20, 1955, Moland signed a sales order for the purchase from Arrowhead of 35 Dorsey trailers. Under date of June 16, 1955, Arrowhead submitted an invoice to Moland showing as sold to Moland 35 Dorsey trailers at $7,300 each with a total of $255,500. On June 20, 1955, Arrowhead and Moland, by their partners, entered into a written agreement entitled, "Lease Agreement" which provided for the rental of 35 Dorsey trailers by Arrowhead to Moland for a 5-year period beginning on August 1, 1955. In summary, the "Lease Agreement" provided as follows: The trailers were to be delivered on or before August 1, 1955. The cost price of each trailer was $7,300. Moland agreed to pay as rent for each trailer for the period from the date of its delivery to August 1, 1955, an amount equal to 6 percent per annum on the purchase price. Moland agreed to pay total rentals in the amount of $295,741.25 for the 60-month period beginning August 1, 1955, at the rate of $4,920.02 per month commencing September 1, 1955. Moland was allowed 24 hours after receipt of a trailer to inspect it and accept it as in good condition and thereafter was to pay the cost of all necessary repairs, maintenance, *105 and replacements. Moland agreed to pay all license and registration fees and taxes attributable to the 35 trailers and to pay for the repair of all damage done to the trailers in use or operation thereof. Moland expressly agreed to assume all risks of loss from the operation of the trailers and to pay for insurance necessary to insure Arrowhead against any liability and/or loss for injury or death to any person or persons and/or for damage to property resulting from the operation by Moland of the trailers, and to insure Arrowhead against loss from damage to the trailers from fire, theft, or other casualty. Moland was to receive credit against the amount payable under the agreement in the event that insurance proceeds were collected by Arrowhead attributable to the 35 trailers. Any excess insurance proceeds over and above the obligation of Moland under the agreement would be paid to Moland. The difference of $40,241.25 between the cost price of the trailers in the amount of $255,500 and the gross amount of $295,741.25 payable under the agreement of June 20, 1955, was an addition for interest. The agreement of June 20, 1955, was executed by Arrowhead and Moland at the insistence *106 of the First and American National Bank of Duluth which was financing the transaction. On June 8, 1955, Arrowhead executed a document entitled, "Assignment of Lease" wherein it assigned all its rights under the agreement of June 20, 1955, entitled, "Lease Agreement" to the First and American National Bank of Duluth, Minnesota. This document provided in part: That whereas we, FRED V. JOHNSON AND WILLIAM BARTO, d/b/a Arrowhead Equipment Company, of the County of St. Louis, State of Minnesota, are indebted to the FIRST AND AMERICAN NATIONAL BANK OF DULUTH, of Duluth, Minnesota, in the sum of Two Hundred Ninety-five Thousand Seven Hundred Forty-one and 25/100ths Dollars ($295,741.25) for money lent to us, payable in monthly installments of Four Thousand Nine Hundred Twenty and 2/100ths Dollars ($4,920.02) each, payable on or before the first day of each month, commencing on the first day of September, 1955, and continuing until said sum has been fully paid, all as evidenced by our promissory note of even date herewith. NOW, THEREFORE, in consideration of the premises and to secure the payment of said debt we do hereby sell, assign, transfer, and set over unto the said FIRST AND AMERICAN *107 NATIONAL BANK OF DULUTH all our right, title, and interest in and to the rental accruing to us as lessors under and by virtue of that certain lease, attached hereto and hereby made a part hereof, together with all rents payable thereunder, including rents payable by virtue of any extension of or renewals thereof. * * * On June 16, 1955, Arrowhead sent to Moland a letter subscribed and sworn to by each of the partners of Arrowhead which stated: This will confirm our conversation with Mr. H. T. Moland of your Company. Reference is made to the Lease Agreement covering thirty-five Dorsey Trailers which we are willing to sell to Moland Brothers Trucking Company at the termination of said Lease. It is our intention that this letter serve as an addition to that Lease Agreement, without the necessity of re-doing that form. In consideration of all the covenants and agreements which the Moland Brothers Trucking Company makes in said Lease Agreement, and for other good and valuable consideration, receipt whereof is hereby acknowledged, the undersigned, Arrowhead Equipment Company, hereby grants to the said Moland Brothers Trucking Company an option to purchase on July 31, 1960, any or *108 all of the thirty-five Dorsey Trailers hereinbefore referred to, on the payment of One Dollar ($1.00) for each trailer purchased. This option is, of course, conditioned on the fulfillment of all the covenants and agreements in said Lease which Moland Brothers Trucking Company has agreed to perform. Moland originally treated the transaction with Arrowhead involving the 35 trailers on its books as a lease by it of 35 trailers, but approximately 6 to 8 weeks after June 20, 1955, upon receipt of a communication from the Internal Revenue Service, changed its books to reflect the transaction as a conditional sale of the trailers. It was fully understood by all parties concerned at all times material hereto that Moland would acquire legal title to the trailers at any time Moland paid the balance due under the contract of June 20, 1955, less an appropriate adjustment for interest. Moland would not have entered into the contract of June 20, 1955, unless it had the right to acquire legal title to the trailers at any time it chose. On or about January 7, 1958, Moland paid the First and American National Bank of Duluth the then balance of $148,449.43 due under the agreement of June 20, 1955, entitled, *109 "Lease Agreement" after an interest reduction of $9,278.99 and acquired legal title to the 35 trailers which were the subject of that agreement. In determining the balance Moland was required to pay on January 7, 1958, to acquire legal title to the 35 trailers, the First and American National Bank of Duluth made the necessary computations of principal and interest due. Arrowhead had no part in the determination of the amount of the final payment upon which was predicated passage of title to the 35 trailers. On January 2, 1958, Moland sold 5 of the 35 trailer units which were the subject of the written agreement of June 20, 1955, to Blewett-Hanson Trailer Sales of Minneapolis, Minnesota, the units sold being numbered 407, 415, 423, 425, and 435, for a total consideraton of $18,862.50. Moland sent along with the statement dated January 2, 1958, the 5 bills of sale and the 5 registration cards attributable to the trailers which were sold. In a separate transaction, not here in issue, Arrowhead and Moland entered into a lease agreement dated January 5, 1956, whereby Arrowhead leased to Moland five Dorsey trailers. The terms of this lease provided that Moland was to pay 6 cents per *110 mile per trailer for the use of the trailer with a minimum rental of $180 per trailer per month. Arrowhead agreed to provide all maintenance on the trailers with the exception of lights, tires, and insurance. Arrowhead further agreed to provide a Minnesota license costing $10 for each trailer. The lease agreement further provided that Moland would have an option to purchase the trailers at a price to be mutually agreed upon by the parties which would reflect the original cost of the trailers, the amount of interest Arrowhead had paid on the trailer, and Arrowhead's cost of maintenance. Arrowhead reported gross receipts from its business in the amount of $515,789.36 for the taxable year ended February 29, 1956. For this taxable year, all transfers of equipment were reported as sales by Arrowhead with the exception of the transfer of the 35 trailers to Moland and the transfer of the 5 additional trailers to Moland under the agreement of January 5, 1956. On its income tax returns for the taxable years ended February 29, 1956, February 28, 1957, and February 28, 1958, Arrowhead claimed depreciation on the 35 trailers transferred to Moland using the straight-line method based upon a *111 useful life of 5 years without any provision for salvage value. Trailers of the type here involved have a salvage value after 5 years of use. Respondent in his notice of deficiency to Fredrick V. Johnson and Loretta Johnson increased their income for the year 1956 as reported by $19,660.27 for "Partnership income understated" and in his deficiency notice to William E. Barto and Gwenneth Barto increased their net income for the year 1956 as reported by $20,773.62 for "Partnership income understated." In each notice respondent explained the adjustment, insofar as here pertinent, as follows: On the partnership return for the taxable year ended February 29, 1956 the amount of $29,574.18 was reported as gross income from the lease of thirty-five (35) Dorsey trailers to Moland Brothers Trucking Company and a deduction of $25,199.99 was claimed as depreciation on these trailers computed on the reported cost basis of $251,999.97. The reported gross lease income of $29,574.18 represents the total of payments received from Moland Brothers Trucking Company during the taxable year in accordance with an agreement made on or about June 20, 1955. It is determined that such payments did not constitute *112 lease or rental income but were partial payments on the sale price of the trailers, since by virtue of these payments Moland Brothers Trucking Company acquired, or would acquire, title to or an equity in the trailers. It is determined that the partnership realized profit of $43,741.28 on the sale of thirty-five (35) Dorsey trailers to Moland Brothers Trucking Company in the taxable year ended February 29, 1956 computed as follows: Sale price of 35 trailers
$295,741.25
Cost of trailers
251,999.97
Profit
$ 43,741.28 Accordingly the ordinary net income is increased in the amount of $43,741.28. Depreciation on the trailers claimed in the amount of $25,199.99 is disallowed at item 4 and the gross lease income reported in the amount of $29,574.18 is eliminated at item 5 herein. Opinion This case presents the question whether a transaction characterized by the parties thereto as a lease should be treated as such for Federal income tax purposes or should be treated as a sale. Similar issues have arisen in numerous cases, some involving the propriety of deductions for rent claimed by the party designated as lessee, [1] and others whether the party designated as lessor *113 is receiving rental income or payments on sales price. In either situation the determination of whether an agreement constitutes a lease or a conditional sale is controlled not by its form or whether the terms "lease" or "rental" are used, but by the substance of the transaction. Beus v. Commissioner, 261 F. 2d 176 (C.A. 9, 1958), affirming 28 T.C. 1133; Quartzite Stone Co., 30 T.C. 511 (1958), affd. on other grounds 273 F. 2d 738 (C.A. 10, 1959); Truman Bowen, 12 T.C. 446 (1949); Robinson v. Elliot, 262 F. 2d 383 (C.A. 9, 1958); Voloudakis v. Commissioner, 274 F. 2d 209 (C.A. 9, 1960), affirming 29 T.C. 1101; and Lemon v. United States, 115 F. Supp. 573 (W.D. Va., 1953).
Petitioners contend that the transaction between Arrowhead and Moland was in substance a lease of the trailers *114 and not a sale since Arrowhead had no choice in selecting the form of the transaction, but was compelled by the requirements of the First and American National Bank of Duluth, which institution financed the transaction, to use the form of lease. The stipulated facts show that the agreement of June 20, 1955, between Arrowhead and Moland was executed at the insistence of the bank. [2] Both parties wished to consummate a sale. Whatever the reason might be for the bank, if it were to finance the transaction, insisting upon the form of a lease, for purposes of Federal income tax it is the intent of the parties as evidenced by the legal effect of their agreements, considered in the light of the facts and circumstances existing when the parties entered into the agreement, which is controlling. D. M. Haggard, 24 T.C. 1124, affd. 241 F. 2d 288 (C.A. 9, 1957).
*115 The evidence in the instant case as to the understanding of the parties as well as the legal effect of the agreement of June 20, 1955, considered in conjuction with the collateral option agreement, clearly indicates that the transaction in substance was a sale of the trailers by Arrowhead to Moland. The agreement of June 20, 1955, provided that the cost price of each of the 35 trailers was $7,300 or a total of $255,500. Moland agreed to pay $295,741.25 over the 60-month term of the lease in equal monthly amounts as "rentals." The evidence shows that the difference of $40,241.25 between the cost price of the trailers and the gross amount payable under the contract constituted interest. When the transaction terminated in January 1958 and Moland paid the First and American National Bank of Duluth the balance due on the contract, an interest deduction was made in the amount of $9,278.99 for what was represented on the bank's records as unearned interest. A stated sales price with interest thereon is indicative of a sale not a lease. Judson Mills, 11 T.C. 25 (1948).moreover, Moland agreed to pay as rent an amount equal to 6 percent per annum on the purchase price of each *116 trailer from the date of its delivery to the date of commencement of the June 20, 1955, agreement on August 1, 1955. Moland agreed to pay the cost of all necessary repairs, maintenance and replacement to the trailers; to pay for the repair of all damage done to property in their use or operation, for all licenses, registration fees, and taxes on the trailers; to assume all risks of loss from the operation of the trailers, as well as to pay for all insurance. Moland agreed that if the trailers were damaged or destroyed, it would receive credit against the total amount payable under the agreement to the extent of insurance proceeds recoverable by Arrowhead and any excess of such insurance proceeds over the amount due under the contract would be paid over to Moland. The agreement as modified by the letter of June 16, 1955, specifically provides for passage of title on the conclusion of the rental payments upon the payment of the nominal amount of $1 per trailer. Cf. Helser Machine & Marine Works, Inc., 39 B.T.A. 644 (1939). The general manager and a partner in Moland testified that Moland would not have entered into the transaction unless it had been understood that *117 it could acquire legal title to the 35 trailers at any time upon payment of the remainder due under the June 20, 1955, agreement, as was in fact done in January 1958. Where the price under a purchase option is nominal in relation to the value of the property at the time of entering into the original agreement, it is clear that the purported lessee is acquiring more than the mere use or possession of the property for the term of the lease and may not be said to be paying rent on property to which he has not taken or is not taking title or in which he has no equity. Quartzite Stone Co., supra, and Judson Mills, supra. Petitioners argue that since respondent has not disturbed petitioners' method of reporting the transfer of five Dorsey trailers on January 5, 1956, by a lease agreement of that date, he is inconsistent in his position in determining that a sale took place in the earlier transaction. We need not reach the issue suggested by petitioners of inconsistent treatment by respondent in his notice of deficiency of similar transactions, for it is clear that the provisions of the agreements of June 20, 1955, and January 5, 1956, differ in material respects *118 and petitioners do not contend, even in the alternative, that the January 5, 1956, agreement constituted a sale. The agreement of January 5, 1956, provides for the rental of five trailers for a 5-year term. The amount of rental is based on a rate of 6 cents per mile per trailer with a stated minimum in the amount of $180 per month per trailer. Moland agreed to pay only for lights, tires, and insurance, while Arrowhead agreed to pay for all other maintenance on the trailers and for a $10 Minnesota license fee. The agreement of January 5, 1956, granted Moland an option to buy the equipment at a price to be mutually agreed upon at the time of exercise of the option which would reflect the cost of the trailer, the amount of interest Moland had paid in connection with the transactions, and the cost of maintenance of the trailer. Certainly, respondent's failure to question that the agreement of January 5, 1956, was a lease in no way reflects on his position with respect to the agreement of June 20, 1955, since the terms of the two agreements are basically different. We hold that the transaction in June 1955 between Arrowhead and Moland was in substance a sale by Arrowhead to Moland of *119 the 35 trailers. Decision will be entered for respondent. Footnotes
1. Sec. 162(a)(3), I.R.C. 1954↩, allows as deductions rentals required to be paid for the use of property for business purposes but only in connection with the property "to which the taxpayer has not taken title or is not taking title or in which he has no equity."
2. There is testimony that the bank required this form of transaction since it actually only advanced to Arrowhead the funds necessary for Arrowhead to purchase the trailers at their wholesale price which was less than the sales price of the trailers to Moland, the latter including, of course, Arrowhead's profit on the transaction whereas if the form had been a conditional sale, the bank would have been required to pay over to Arrowhead the full stated sales price to Moland. This testimony indicates that the amount representing Arrowhead's profit would be paid over to Arrowhead by the bank after the bank had collected a sufficient sum under the assignment to it of the June 20, 1955, agreement to reimburse itself for its advances to Arrowhead which would be sometime during the fifth year unless, as did occur, the payments were accelerated. We have made no findings in this regard since the evidence does not show how this testimony should be reconciled with the provision of the stipulated document entitled, "Assignment of Lease" which recites that Arrowhead is indebted to the bank in the amount of $295,741.25 for money loaned to it. We do not, however, consider that a finding from this testimony would affect our conclusion herein since petitioners have neither offered evidence to show nor made any contention that the amount of the profit from the transaction as determined by respondent in his notice of deficiency is in error if respondent is sustained in his position that the agreement of June 20, 1955, was in substance a conditional sales contract. There is some testimony regarding some used trailers which Arrowhead took from Moland on a consignment basis apparently as a substitute for a trade-in arrangement. However, the income to petitioners, if any, arising from this transaction is not here in issue.↩